## IN RE STINGER ESTATE.

(No. 4,477.)

(Submitted September 22, 1921. Decided October 24, 1921.)

[201 Pac. 693.]

*Probate Proceedings—New Trial—Executors and Administrators—Guardian and Ward—Claims—Verification—Jurisdiction — Equity — Subrogation — Laches — Indians —Contracts—Promissory Notes—Accommodation Makers—Liability—Statute of Limitations.*

New Trial—Lies, When.
1. Under section 6794, Revised Codes, a new trial—a re-examination of the facts—lies where an error of law has been committed by reason of misapplication of law to the facts.

Probate Proceedings—New Trial Lies When.
2. Where formal pleadings authorized or required by the statute in a probate proceeding, no matter how denominated, present issues of fact, a new trial lies even though the proceeding was disposed of solely upon a question of law.

Same—Pleadings Presenting Question of Fact—Decision of Question of Law—Motion for New Trial Proper.

3. *Held,* under the above rules, that where a guardian petitioned the court in a probate proceeding for an order directing an administrator to pay certain claims allowed against the estate as due his wards to himself personally, on the ground that he had become subrogated to their rights, to which petition objections in the nature of answers were filed, petitioner filing replies, raising issues of fact, the court denying the petition for lack of jurisdiction to determine the equitable claim of subrogation, a motion for new trial lay.

Same—Minors—Guardian Proper Person to Make Affidavit.

4. Where a minor is incompetent to make an affidavit, his guardian is the proper person to make it.

Same—Claims by Guardian—Verification—Sufficiency.

5. Where a claim against an estate showed on its face that it was made by claimant as guardian, the fact that the verification required by section 7526, Revised Codes, was made by him individually without any reference to his official capacity as guardian did not render the claim fatally defective.

Same—Claims—Verification—Absence of Notary's Seal—When not Fatal Defect.

6. Section 320, subdivision 6, Revised Codes, prior to amendment thereof by Chapter 103, Laws of 1909, did not require a notary public to affix his seal to an affidavit; hence its absence from a verification to a claim against an estate made in 1907 did not render the verification insufficient.

Same—Probate Courts—Jurisdiction—Questions of Equitable Cognizance—When Properly Determinable.

7. Though the district court sitting in probate is without power, as a general rule, to determine questions of equitable cognizance, yet where a determination of such questions is a necessary incident to the carrying out of the powers expressly granted to it, it may take jurisdiction.

Same—Claims Against Estate—Subrogation—Jurisdiction.

8. A guardian petitioned the probate court to direct the administrator of an estate to pay to him personally claims due his wards which had been allowed by the administrator and approved by the judge, on the ground that he had become subrogated to the rights of the minors by payment to them of the notes upon which the claims were based. *Held,* under the above rule (par. 7) that the court having the power, directly granted, to direct payment and to determine to whom payment was due, it could properly pass upon the necessarily incidental question whether petitioner was entitled to payment under the principle of subrogation.

Same—Guardians—Claims—Subrogation—Laches.

9. Where a guardian had made full and complete settlement with his wards, delays in arriving at a settlement were of no concern to an estate in a proceeding whereby he sought to obtain an order directing the administrator to pay to him allowed and approved claims, to the rights of his wards in which he alleged he had become subrogated.

Same—Claims—Payment—Laches.

10. While an owner of a claim against an estate may take action to expedite payment where unreasonable delay has occurred, it is not obligatory upon him to do so; he may assume that claims will be paid in due course of administration when the estate is in condition to pay, without laying himself open to a charge of laches.

[61 Mont. 173.]

Same—Claims—Guardians—Subrogation—When Proper.
    11. Where a guardian had make full settlement with his wards of the affairs of his trust, including the proceeds of two promissory notes made payable to him in his official capacity, he was entitled to an assignment of the notes to him, in the absence of which subrogation could be decreed under the principle that equity will consider as done what in good conscience should have been done.

Same—Claims—Guardians—Unwarranted Use of Trust Funds—Subrogation.
    12. Under the rule that when one, acting in a fiduciary or representative capacity, uses his own funds to satisfy an obligation for the benefit of his trust, he is subrogated to the rights of his principal, *held* that a guardian who, having made an unwarranted investment of trust funds, was compelled to account therefor, was not deprived of his right to subrogation by the fact that the investment was unlawful.

Indians—Contracts—Enforceability.
    13. *Held*, that section 4087, United States Compiled Statutes, declaring invalid contracts with an Indian not a citizen of the United States unless approved by the secretary of the interior and the commissioner of Indian affairs, refers to contracts affecting Indian allotments, and therefore did not render void promissory notes signed by an Indian, which did not involve allotment rights.

Same—May Make Valid Contracts.
    14. Unless prohibited by statute, an Indian may make valid contracts.

Promissory Notes—Accommodation Maker Primarily Liable, When.
    15. One who signed a note on its face in conjunction with others was primarily liable for its payment, even though he was an accommodation maker only.

Same—Co-makers—Statute of Limitations—Commences to Run, When.
    16. An accommodation maker of a promissory note held liable for its payment was not prejudiced in her right to reimbursement from the principal debtor by the fact that the statute of limitations had run against her co-makers, since the limitation of an action as against him commenced to run only from the date the note was paid.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

PETITION by J. M. Keith for an order directing payment of claims by Andrew Stinger, administrator of the estate of Louise Stinger, deceased. Petition denied, and from an order granting a motion for new trial, the administrator and other objectors appeal. Affirmed.

---

    11. The right of subrogation, see note in 99 **Am. St. Rep.** 474.
    Right of one who advances money for payment of debt or encumbrance against decedent's estate to be subrogated to the rights of the creditor, see notes in 11 **Ann. Cas.** 676; **Ann. Cas.** 1915C, 130.

*Mr. E. C. Mulroney, Mr. B. K. Wheeler, Mr. Frank Woody, Mr. John P. Swee,* and *Mr. William Wayne,* for Appellants, submitted a brief; *Mr. Wheeler* and *Mr. Wayne* argued the cause orally.

We contend that the respondent, being dissatisfied with the decision of the court holding that it had no jurisdiction to entertain his petition, his only remedy was by appeal under the provisions of section 7098, Revised Codes, subdivision 3. The same court which heard his petition and decided that it had no jurisdiction could not, by entertaining a motion for a new trial, sit as a reviewing court and, upon a change of mind, reverse itself. The motion for a new trial was not applicable in the instant proceeding and the court was in error in entertaining it. (*State ex rel. Ferry Co.* v. *District Court,* 49 Mont. 595, 144 Pac. 159; *State ex rel. Heinze* v. *District Court,* 28 Mont. 227, 72 Pac. 613; *In re Antonioli's Estate,* 42 Mont. 219, 111 Pac. 1033; *State ex rel. McHatton* v. *District Court,* 55 Mont. 324, 176 Pac. 608.)

The whole doctrine of subrogation is of equitable cognizance only. The position of the appellants on this phase of the case is that the probate court has no jurisdiction to hear and determine a matter which is of purely equitable cognizance. The probate court in this state is one of statutory authority only, and has only such jurisdiction and powers as are expressly conferred, or necessarily implied from those granted. (*Bullerdick* v. *Hermsmeyer,* 32 Mont. 541, 81 Pac. 334; *Chadwick* v. *Chadwick,* 6 Mont. 566, 13 Pac. 385; *In re Dolenty's Estate,* 53 Mont. 33, 161 Pac. 524; *Davidson* v. *Wampler,* 29 Mont. 61, 47 Pac. 82; *State* v. *District Court,* 18 Mont. 481, 46 Pac. 259; *In re Higgin's Estate,* 15 Mont. 474, 502, 28 L. R. A. 116, 39 Pac. 506; *State* v. *District Court,* 54 Mont. 172, 168 Pac. 522.)

The next contention of the appellants is that, on the merits, Keith is not entitled to subrogation to any rights which his wards might have had, for the reason that he does not oc-

cupy that position of rectitude and good conscience which is the basis upon which equitable relief is extended. "He who comes into equity must do so with clean hands." The maxim denies all relief, however well founded the suitor's claim to it may otherwise be, if in granting the relief sought the court would be required, even by implication, to affirm the validity of an unlawful transaction or agreement, or to give its approval to inequitable conduct. (Pomeroy's Equity Jurisprudence, sec. 400; *Rowley* v. *Towsley*, 53 Mich. 329, 19 N. W. 20; *Brown* v. *Sheldon State Bank*, 139 Iowa, 83, 117 N. W. 293.)

"Equity aids the vigilant, not those who sleep on their rights." The claim against the estate of Louise Stinger, such as it was, was presented and allowed on September 10, 1907. Keith's petition asking that he be subrogated to the rights of his ward was filed on September 7, 1916. Louise Stinger was an accommodation maker. If Mr. Keith ever had any equitable rights in the premises, we say that they have long since been lost by laches on his part, with the accompanying sacrifice of the rights of his wards in case his position should be upheld. (*Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764; *Mantle* v. *Speculator Mining Co.*, 27 Mont. 477, 71 Pac. 665.)

If the estate of Louise Stinger should be compelled to pay the claim of Keith, she being only an accommodation maker, the estate could not compel her cosureties or the principal maker to contribute, the statute of limitations having been permitted to run, as to them, through Keith's negligence. (*Cocke* v. *Hoffman*, 5 Lea (Tenn.), 105, 40 Am. Rep. 23; *Shelton* v. *Farmer*, 9 Bush (Ky.), 314; *Cochran* v. *Walker*, 82 Ky. 220, 56 Am. Rep. 891; *Stockmeyer* v. *Oertling*, 35 La. Ann. 467; *Long* v. *Miller*, 93 N. C. 227; *Green* v. *Greensboro Female College*, 83 N. C. 449, 35 Am. Rep. 579.)

Another reason why Keith should not be allowed to recover in this matter is because of the fact that the statute of limitations having run against the principal maker, the surety

or accommodation maker is discharged. (Secs. 5877, 5968, Rev. Codes.)

"A claim barred by the statute of limitations as against the principal debtor is barred also as against the surety." (*Auchampaugh* v. *Schmidt*, 70 Iowa, 644, 59 Am. Rep. 459, 27 N. W. 805; *Bridges* v. *Blake*, 106 Ind. 332, 6 N. E. 833.) "If a creditor to whom two persons are obligated, one as principal and the other as surety, release the former, he also discharges the latter." (*Brown* v. *Chicago etc. Ry. Co.*, 76 Neb. 792, 107 N. W. 1024.) "When a cause of action against a principal becomes barred by the statute of limitations, an action against the surety on the notes is also barred. (*Mulvane* v. *Sedgley*, 63 Kan. 105, 55 L. R. A. 552, 64 Pac. 1038; *Shutts* v. *Fingar*, 100 N. Y. 539, 53 Am. Rep. 231, 3 N. E. 588.)

Louise Stinger, at the time of making the note in question, and, in fact, was an Indian and a ward of the government, and as such she could not enter into an agreement unless she complied with certain requirements of United States Compiled Statutes of 1916, section 4087. (*In re Sanborn*, 148 U. S. 222, 37 L. Ed. 429, 13 Sup Ct. Rep. 577 [see, also, Rose's U. S. Notes]; *Smith & Steele* v. *Martin*, 28 Okl. 836, 115 Pac. 866; *Green* v. *Menominee Tribe*, 233 U. S. 558, 58 L. Ed. 1093, 34 Sup. Ct. Rep. 706.)

*Messrs. Murphy & Whitlock* and *Mr. Thos. N. Marlowe*, for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

In Montana, the only method that the trial court has of correcting an error of law, if it makes one, is by granting a motion for new trial, and it was properly granted in this case. The pleadings disclose that there were issues of fact raised by the pleadings, and there was likewise considerable conflict in the testimony upon some of those issues. It matters not that the decision of the court was based upon a purely legal ground, as that question goes solely to the merits and does not at all

affect the question of the propriety of a motion for new trial. We believe that our position is supported by the decision of this court in the case of *In re Davis,* 27 Mont. 235, 70 Pac. 721, where a motion was made to dismiss the appeal from an order denying a new trial on the theory that a motion for new trial was not proper in that proceeding, which was a probate proceeding.

The probate court had jurisdiction of Mr. Keith's petition for subrogation. A court must necessarily have power to hear and determine all questions of law the determination of which is ancillary to a proper judgment. (Ross on Probate, 217.) In California the Code and constitutional provisions referring to probate are practically identical with our own, and we refer to the following cases as supporting our position upon the question of jurisdiction. (*In re Clary,* 112 Cal. 292, 44 Pac. 569; *Estate of Burton,* 93 Cal. 459, 29 Pac. 36; *In re Warner's Estate,* 6 Cal. App. 361, 92 Pac. 191; *Browder* v. *Phinney,* 30 Wash. 74, 70 Pac. 264; *Hayden* v. *Hargan,* 202 Ill. App. 544; *State* v. *Probate Court,* 133 Minn. 124, 155 N. W. 906, 158 N. W. 234; *Estate of Davis,* 27 Mont. 490, 71 Pac. 757; *In re Cummings' Estate,* 143 Cal. 525, 77 Pac. 479.)

The weight of authority is that in cases where a person occupying a position of trust such as an administrator or guardian is required to account to the heirs, or to the wards, as the case may be, he may rely for reimbursement upon any claim which they had against a third person. (37 Cyc. 439, 440.) The following very recent cases are typical of the holdings generally: *Smith* v. *Moore,* 109 S. C. 196, 95 S. E. 351; *Franzell* v. *Franzell,* 153 Ky. 171, 154 S. W. 912; *Buskirk* v. *Sanders,* 70 W. Va. 363, 73 S. E. 937 (a case similar to this, where the guardian paid off a lien and was held to be subrogated to the right of the holder thereof); *Flowers* v. *Reece,* 92 Ark. 611, 123 S. W. 773; *Earle* v. *Coberly,* 65 W. Va. 163, 17 Ann. Cas. 479, 64 S. E. 628.

[61 Mont. 173.]

Appellants next submit that Mr. Keith is barred because of the fact that he allowed the statute of limitations to run against the other signers of the note, and that one of these was the principal maker. Let us assume, for the sake of argument, that Stinger was the principal maker, and we will likewise admit that the relationship of suretyship may be shown by parol. Yet we submit that while the discharge of the principal likewise discharges the surety, such is not the case where the discharge results from the operation of law. (32 Cyc. 228; *Daniel* v. *Harvin,* 10 Tex. Civ. App. 439, 31 S. W. 421; *Nelson* v. *First Nat. Bank,* 69 Fed. 798; 8 C. J. 617.) The case of *Charbonneau* v. *Bouvet,* 98 Tex. 167, 82 S. W. 460, is exactly in point, and holds that although the statute of limitations has run as to the principal debtor, this does not bar the claim against the surety's estate, which would be the exact situation here, if the statute of limitations had run as against the other signers before the claim was presented and allowed. It should likewise be noted in this connection that a surety who is seeking exoneration or contribution bases his claim not upon the instrument representing the original obligation, and consequently the statute of limitations, as pointed out in the preceding point, begins to run only from the time of payment (see 18 L. R. A. (n. s.) 585), so that in this case if Louise Stinger was a surety, her rights have been in no way prejudiced by allowing the statute of limitations to run after the claim was presented and allowed; and if she was principal, she can assert no claim in this regard because the claim was actually presented to her estate and allowed before the statute of limitations had run against anybody.

Section 4087, United States Compiled Statutes (sec. 2103, Rev. Codes), does not apply to contracts generally made by Indians not affecting the matters referred to in the section. It was passed for the particular purpose of protecting Indians from improvident contracts for services in connection with their lands. (*Smith & Steele* v. *Martin,* 28 Okl. 836,

115 Pac. 866; *Green* v. *Menominee Tribe,* 233 U. S. 558, 58 L. Ed. 1093, 34 Sup. Ct. Rep. 706 [see, also, Rose's U. S. Notes] ; *Postoak* v. *Lee,* 46 Okl. 477, 149 Pac. 155.)

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Louise Stinger died November 25, 1905, and Andrew Stinger, her widower, was appointed and qualified as administrator of her estate. Notice to creditors was given, and time for presentation of claims expired. Within the time limited for presentation of claims, J. M. Keith, as guardian of Eva May Allard and Louise Anna Allard, minors, presented two claims, each in the sum of $7,000, and based upon a promissory note dated May 10, 1902, payable on demand to J. M. Keith, guardian. These two notes were signed by Louise Stinger, decedent, Charles Allard, Andrew Stinger, and L. J. B. Jette. These claims were allowed by the administrator and approved by the judge of the court. On September 7, 1916, Keith filed a petition praying for an order of the court directing the administrator to pay to him personally these two claims, insisting that for reasons hereinafter stated he had become subrogated to the rights of the estate of the minor children as to the title to the notes and the claims. At that time all other claims had been paid, and there were more than sufficient funds with which to pay these claims. Formal objections, in the nature of answers, were filed to the allowance of this petition by the administrator officially, and also personally, by Leon Bishop, as guardian of the minor children of Louise Stinger, deceased, and by Eva May Allard as an heir at law of Louise Stinger, deceased. These several answers expressly deny the jurisdiction of the district court sitting in probate to grant the relief prayed for in the petition, for the reason that the right of the petitioner depends upon his claim of subrogation, which presents an issue that can be determined only by a court of equity. The answers also raise some issues of fact upon the merits. To these

answers replies were filed by the petitioner. The matter came on for hearing before the court without a jury, evidence was taken in support of and in opposition to the petition, and decision was rendered by the court denying the petition on the sole ground that it did not have jurisdiction in that proceeding to determine the equitable claim of subrogation upon which plaintiff's petition was founded. A motion for new trial was granted, and appeal has been taken from the order by all the parties filing objections to the petition.

The assignments of error present two questions for determination: First, was a motion for new trial permissible in a probate proceeding of this kind? Second, if motion for new trial was permissible, was the order granting the new trial justified upon the merits?

It is urged by appellants that in a probate case of this kind [1] a motion for new trial will not lie, because the petition was not disposed of by a determination of facts, but was disposed of solely upon a question of law; that a new trial is authorized only for the re-examination of issues of fact, and that in this case, the question involved being only an issue of law, there could not be a re-examination of issues of fact.

A new trial is defined by the Code as follows: "A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury or court, or by referees." (Rev. Codes, sec. 6793.) A new trial may be granted on the application of the party aggrieved for the following causes, among others: (1) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law; (2) error in law occurring at the trial and excepted to by the party making the application. (Rev. Codes, sec. 6794.) Under this statute it is evidently contemplated that a re-examination of the facts may be had when the court is satisfied that an error of law has been committed by reason of misapplication of the law to the facts, for if otherwise, how then could a new trial be granted because of insufficiency of

the evidence, or because the decision is against law, or on account of error in law occurring at the trial, since these questions are purely law questions? This interpretation of the law has been made in a number of instances involving judgments of the court upon sustaining motion of defendant for nonsuit or motion for directed verdict. In each of these cases the decision is a determination of a question of law, and not a determination of a question of fact, but it has been held uniformly by this court that a motion for a new trial will lie in such cases. (*Old Kentucky Distillery* v. *Stromberg-Mullins Co.*, 54 Mont. 285, 169 Pac. 734; *St. Paul M. Mfg. Co.* v. *Bruce*, 54 Mont. 549, 172 Pac. 330; *Nelson* v. *Northern Pac. Ry. Co.*, 50 Mont. 516, 148 Pac. 388.) The new trial involves a re-examination of the facts with opportunity to make a different application of the law to the facts if the court conceives that it has committed error in its former ruling.

Respondents misinterpret the situation when they contend [2] that there is nothing in this case to review but a question of law. It is true that the court decided the case upon the law point that it did not have jurisdiction to grant the relief prayed for, but whether or not the review is a re-examination of facts does not depend upon the reason given by the court for its decision, but rather upon the question whether or not the pleadings as made present issues of fact. It has been determined by this court that: "While the provisions of the Codes relative to new trials and appeals apply generally to probate proceedings (Rev. Codes, sec. 7712), controversies which do not arise upon written pleadings authorized or required by statute do not fall within them, because a 'new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury or court, or by referees' (Rev. Codes, sec. 6793), and an issue of fact for the purpose of a trial arises upon formal pleadings (Rev. Codes, sec. 6723)." (*In re Antonioli's Estate*, 42 Mont. 219, 111 Pac. 1033; *State ex rel. Heinze* v. *District Court*, 28 Mont.

227, 72 Pac. 613.) The real question, then, is whether or not [3] an issue of fact is presented in this case upon formal pleadings authorized or required by the statute. If such issue of fact is thus raised, then a motion for new trial will lie; otherwise not.

In the Title of the Code relating to probate proceedings appear the following sections:. "The provisions of Part II of this Code, relative to new trials and appeals—except in so far as they are inconsistent with the provisions of this Title— apply to the proceedings mentioned in this Title." (Rev. Codes, sec. 7712.) "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of Article II, Chapter II, of this Title, and in all such proceedings the party affirming is plaintiff, and the one denying or avoiding is defendant. Judgments therein, on the issue joined, as well as for costs, may be entered and enforced by execution or otherwise, by the court or judge, as in civil actions." (Sec. 7714.) "If no jury is demanded, the court or judge must try the issues joined. If on written demand a jury is called by either party, and the issues are not sufficiently made up by the written pleadings on file, the court or judge, on due notice to the opposite party, must settle and frame the issues to be tried, and submit the same, together with the evidence of each party, to the jury, on which they must render a verdict. Either party may move for a new trial, upon the same grounds and errors, and in like manner, as provided in this Code for civil actions. * * * " (Sec. 7715.) Article II, Chapter II, referred to in section 7714, deals with contests of wills, and therefore, under this section, issues of fact must be tried in conformity with the requirements of the Code as to the contest of wills. This applies to all issues of fact joined in probate proceedings. If no jury is demanded, the court or judge must try the issues joined, and either party may move for a new trial upon the same grounds and errors, and in like manner as provided in the Code for civil. actions. In this case, issues of fact were

joined by formal pleadings consisting of the petition by Keith, the answers of the appellants and the reply by Keith. While not denominated complaint, answer, and reply, respectively, as in the trial of the ordinary civil action, nevertheless the pleadings are just as formal and just as effectual in presenting the issues of fact involved therein. The clear meaning of the probate statutes is that, when formal pleadings are filed presenting issues of fact, the parties should proceed to a formal trial, and, upon the determination of the issues of fact by the court, the aggrieved party may move for a new trial the same as in other cases.

Appellants contend that, by reason of the decisions of this court in the cases of *In re Antonioli's Estate* and *State ex rel. Heinze* v. *District Court, supra,* motion for new trial cannot be made in probate proceedings. In the former case two applications for letters of administration were heard together and issue was not joined in formal pleadings as to any fact alleged in either petition. Under these circumstances, the case would not come within the rule as to issues being embodied within formal pleadings, and therefore is not in point. In the latter case, action was brought to compel relator to pay to a receiver the amount of allowances granted to him in an order allowing his final account as receiver. The court entered an order against the relator for the payment of these allowances. There was no issue of fact arising upon formal pleadings, and the court held that a motion which does not ask for a decision of an issue of fact arising upon formal pleadings is not the subject of a motion for new trial. Neither of the cases is inconsistent with the contention here that a motion for a new trial will lie by reason of the fact that there were formal pleadings presenting issues of fact.

This court had occasion to pass upon this question in *In re Davis' Estate,* 27 Mont. 235, 70 Pac. 721. After quoting the sections of the Code relative to trials of issues of fact in probate proceedings above set forth, it stated that: "Contests of this kind must be conducted with the formalities and pro-

cedure applicable to ordinary actions, with the aid of all the court machinery necessary for that purpose. If this is the correct theory—and we think it is—then, whenever an issue of fact is made, and the trial is had in the ordinary way, a motion for a new trial will lie, and a re-examination of the issues may be had. 'It would be impracticable to enumerate the cases in which a motion for a new trial is appropriate in probate proceedings, but it may be stated generally that whenever the action of the court which is invoked is dependent upon the existence of certain extrinsic facts which are presented to it for determination in the form of pleadings, and are to be decided by it in conformity with the preponderance of the evidence offered thereon, an issue of fact arises, which, after its decision, may be re-examined by the court upon a motion for a new trial.' (*In re Bauquier's Estate*, 88 Cal. 302, 26 Pac. 178; 532.)''

As a motion for a new trial in civil actions can be made upon the ground of the insufficiency of the evidence to sustain the verdict or judgment that the decision is against the law, and that errors in law occurred upon the trial, so in probate proceedings, where issues have been joined in formal pleadings, motion for new trial can be made upon these grounds. As these were the grounds assigned for a new trial in the motion in this case, respondents were within their rights in making such a motion.

Appellants insist that the claims as filed were not in [4, 5] compliance with the statute requiring verification by the creditor or someone in his behalf. The claims were identical in form, and therefore a consideration of the one filed as guardian of Eva May Allard, minor, will dispose of both of them. The claim on its face purported to be the claim of J. M. Keith, guardian of Eva May Allard. The verification was made by John M. Keith without any reference whatever to his official capacity as guardian. It is contended that, if this was intended as the presentation of the claim of the minor, it was insufficient, because it does not purport to be

presented as such, contains no allegation that she is a creditor or claimant, and contains no affidavit or verification by her or purported to be made in her behalf. The requirement of the statute as to the affidavit is as follows: "Every claim which is due, when presented to the executor or administrator, must be supported by the affidavit of the claimant, or someone in his behalf, that the amount is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the affiant. * * * " (Sec. 7526, Rev. Codes.)

The verification, omitting the caption, was in the following form:

"John M. Keith, whose foregoing claim is herewith presented to the administrator of said deceased, being duly sworn, says: That the amount thereof, to wit, the sum of eight thousand four hundred sixty-two and 50/100 ($8,462.50) dollars is justly due to said claimant; that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of said affiant.

"[Signed]  J. M. KEITH.

"Subscribed and sworn to before me this 10th day of September, 1907.

"HENRY C. STIFF,

"Notary Public in and for Missoula County, Montana."

Presumably a minor may be incompetent to make an affidavit, and in such event there must be someone authorized to make an affidavit in his own behalf. It is hardly open to dispute that in such case the guardian is the proper person to make such affidavit. (2 C. J. 321, par. 16.) As the guardian is the representative of the estate, a claim made by him as such guardian is presumably in behalf of the estate. By this verification it appears that John M. Keith is the identical person referred to as J. M. Keith, guardian, but the affidavit is an individual affidavit. However, we cannot understand that there can be any distinction between an affi-

davit made by a person as a guardian and another as an individual covering identically the same subject matter in identically the same form. If there is, it is a distinction without a difference. In either case, it is the individual that is making the oath, and it is the individual that is responsible for any false statements contained therein, and who is liable for prosecution for perjury if perjury has been committed. (*Wade* v. *Roberts,* 53 Ga. 26.) We are therefore of the opinion that the point made by the appellants that the affidavit is insufficient in the respects mentioned is not well taken.

Objection is also made to the affidavit for the reason that the [6] seal of the notary public was not affixed to the jurat. However, it appears that, at the time the affidavit was made, the present statute requiring the notary public to affix his seal to authenticate his official acts had not been enacted then, and that the provisions of the law in force did not require him to authenticate with his official seal an affidavit to be used in this state in any of its courts, or in any manner whatever. (Rev. Codes, sec. 320, subd. 6.)

Appellants insist that the trial court, sitting as a court in [7] probate, had no jurisdiction to grant the relief prayed for in the petition, for the reason that petitioner relies upon the claim of subrogation to the rights of his former wards, that the right of subrogation is equitable in its nature, and that such equitable right cannot be determined in a probate proceeding, but can be determined only in a proceeding in equity. This contention is based upon a line of decisions consistently holding that the district court sitting as a probate court is of limited jurisdiction, and that its powers are only those which are expressly granted by the statute or necessarily implied to give effect to those expressly granted. It is uniformly held that such power does not confer jurisdiction generally to entertain proceedings to determine equitable questions, but that such cases must be brought in the district court exercising such equitable jurisdiction. It is conceded by all parties to this case that such is the general rule, but

respondent contends that there exists a well-defined exception to that rule to the extent that it may become necessary for the probate court to determine an equitable question as a necessary incident to the carrying out of the powers expressly granted to the probate court.

In support of appellants' contention, a number of Montana cases are cited, but each one of them may be distinguished from the case under consideration. In the case of *Chadwick* v. *Chadwick*, 6 Mont. 566, 13 Pac. 385, an action was brought in the probate court for construction of a will. This proceeding was brought independently of any other proceeding in the administration of the estate, and therefore the jurisdiction to hear the petition depended upon whether or not the power to construe a will was expressly granted by the statute. It was held that the court did not have jurisdiction to entertain such an action. In *In re Dolenty's Estate*, 53 Mont. 33, 161 Pac. 524, it was held that the probate court did not have jurisdiction to determine the question of title as to real estate between the estate and the widow of the deceased claiming the real estate adversely. In *Davidson* v. *Wampler*, 29 Mont. 61, 74 Pac. 82, it was held that the probate court was not empowered, under the statute as it then existed, to authorize a guardian to mortgage the real estate of his ward. In *State ex rel. Bartlett* v. *District Court*, 18 Mont. 481, 46 Pac. 259, it was held that a special administrator had no authority other than to collect and preserve the estate, and did not have any authority to pay claims. In *State ex rel. Eisenhauer* v. *District Court*, 54 Mont. 172, 168 Pac. 522, it was held that the probate court has no authority to allow a fee to an attorney for services rendered the administrator in the settlement of the estate, but that the matter of attorney fee was a question between the administrator and the attorney, and that the only function of the court in regard to it was the allowance or disallowance to the administrator of an attorney fee paid for which the credit is claimed in the administrator's final account. In *In re Higgins' Estate*, 15 Mont. 474, 28 L. R. A. 116,

39 Pac. 506, there is a general discussion of the limitation
of the jurisdiction of the probate court, but it does not decide
any specific point material to the determination of this case.
It is to be noted that in each one of the cited cases the juris-
diction of a probate court was denied, for the reason that
in each case the relief sought was not included within the
express powers granted the probate court, nor was it neces-
sarily incidental to the exercise of such expressly granted
powers.

The real question to be determined here is whether or not
[8] the power to make determination of the right of the
petitioner to subrogation was necessarily implied from the
fact that the court, in the exercise of its probate jurisdiction,
does have express authority to direct the payment of claims.
As a general proposition, a court must necessarily have power
to hear and determine all questions of law which are neces-
sary to an ultimate decision of the issues involved. (Ross on
Probate Law and Practice, 217.) In California the probate
statutes are substantially the same as our own, and in that
state a number of decisions have been handed down illustrat-
ing the right of the probate court to consider matters equi-
table in nature, the determination of which becomes necessary
in the exercise of the powers expressly granted. In the case
of *In re Clary,* 112 Cal. 292, 44 Pac. 569, it was held that
after a decree of distribution the probate court had jurisdic-
tion to compel an accounting from the executor to one of the
heirs. In the case of *Estate of Burton,* 93 Cal. 459, 29 Pac.
36, the question arose as to whether or not the purchaser of
the rights of an heir to land before distribution could main-
tain his petition in the probate court for determination of
his title, and for an order assigning to him the share of his
vendor. An excerpt from the opinion in that case sets forth
concisely the theory upon which such jurisdiction is vested, as
follows: ''It will not be denied that the decree of distribution
and the order discharging the executor or administrator are
within the scope of 'matters of probate,' in the sense of the

Constitution, from which it necessarily follows that the court must have the incidental power, in some mode, to ascertain and determine who are entitled, as distributees, to the residue of the estate, even though such determination should involve a question as to title or possession of real property.'' In *In re Warner's Estate*, 6 Cal. App. 361, 92 Pac. 191, it was held that, in a contest on a petition for appointment of administrator, the probate court had jurisdiction to determine the validity of an antenuptial contract which was involved, it being claimed that the contract was void because of fraud. In the case of *In re Cummin's Estate*, 143 Cal. 525, 77 Pac. 479, it was held that the assignee of an allowed creditor's claim may petition the probate court for payment thereof to himself. This involved, of course, the validity of the assignment which is not within the general powers of the probate court to determine, but it was held to be within its jurisdiction inasmuch as that was incidental to the power of the court to order the payment of the claim. That case, in principle, is very similar to the one at bar. Other states have gone even further than the California courts in holding that the probate court has jurisdiction to determine equitable questions where necessary to the proper disposition of its probate business. (*Browder* v. *Phinney*, 30 Wash. 74, 70 Pac. 264; *Hayden* v. *Hargan*, 202 Ill. App. 544; *State* v. *Probate Court*, 133 Minn. 124, 155 N. W. 906, 158 N. W. 234.) This court, in considering the right of the contestants of a will to share in the estate, sets forth in general terms the jurisdiction of the probate court to dispose of questions necessarily incidental to the exercise of the powers expressly conferred, in pertinent language as follows: ''This argument proceeds upon the theory that, though the district court is one of general jurisdiction, yet, when exercising its probate jurisdiction, its powers are limited by the statute from which they are derived, and unless express authority can be found in the statute for the particular order, or part of it, which is called in question, it is void, citing *State ex rel. Bartlett* v.

*District Court,* 18 Mont. 481, 46 Pac. 259; *State ex rel. Shields* v. *District Court,* 24 Mont. 1, 60 Pac. 489; *Burns* v. *Smith,* 21 Mont. 252, 69 Am. St. Rep. 653, 53 Pac. 742; and *State ex rel. Kelly* v. *District Court,* 25 Mont. 33, 63 Pac. 717. Speaking generally, the soundness of this proposition is not controverted. The foregoing cases fully support it; but they are not inconsistent with another proposition of equal weight and importance: that, though the jurisdiction of the court when exercising its probate powers is, in a sense, special and limited, and depends upon the statute, yet, by implication, it also possesses all powers incidentally necessary to an effective exercise of the powers expressly conferred. This must be the case. Otherwise the court would be unable to discharge its very important functions. Touching its powers in respect of executors and administrators, the proper function of the court is the control of the devolution of property upon the death of its owner. All questions of law and fact which necessarily arise from the inception of the proceeding down to and including the distribution of the property must necessarily fall within the purview of this power of control.'' (*Estate of Davis,* 27 Mont. 490, 71 Pac. 757.)

Applying the principles of the decisions hereinbefore referred to to the case under consideration, can it be said that the determination of the question whether or not Keith was subrogated to the rights of his former wards in the matter of the claims in question could be had in a probate proceeding upon his petition for an order directing payment of these claims to himself? Under the probate statutes, there can be no question whatever but that it is within the jurisdiction of the probate court, in the course of administration, to direct the payment of claims that have been allowed against the estate. It is certain that it cannot direct the payment of an allowed claim unless it is advised as to whom the payment of that claim should be made. If there is no dispute as to the title of the claim as between the one to whom it is allowed and the one who asks for its payment, as in this case, it would

seem to this court that there could be no question but that
the court could, in the exercise of its granted powers, deter-
mine that the claim should be paid to the one claiming title
thereto.   In case there is a substantial dispute between two
or more claimants as to the title, a different question would
be presented, which we do not decide at this time.   In this
case, the probate court would be within its jurisdiction in
determining whether or not Keith was subrogated to the
rights of its former wards and entitled to an order directing
payment of the claims to him.

It is urged by appellants that the determination of this
[9]  question in the probate proceeding prevents a hearing
on the equitable defenses that might be made to his claim
of subrogation.   As between Keith and the estate, there
could be no equitable defenses because the obligations were
unequivocal promissory notes which had been allowed by the
administrator and approved by the judge; the consideration
for the notes was undisputed, and the obligation of the
makers of the notes unquestioned.   There could be no equities
as between the former wards and Keith, because there had
been a full and complete settlement between him and them, as
hereinafter set forth, whereby they had received everything
from him that under the decree of the court they were entitled
to receive, by which settlement all their interest in the notes
was necessarily extinguished.

Appellants also urge that Keith should not be entitled to
[10]  recover in this proceeding because of laches consisting
of his failure to make more prompt settlement of his guard-
ianship accounts, and also to take action sooner in the court
to have his claim paid.   His delays in settlement of his
guardianship accounts are immaterial as between him and
the estate of the deceased, and even though there may have
been unreasonable and inexcusable delays in his accounting
as guardian, yet, a full and complete settlement having been
made by him with his former wards, it must be held that
such settlement is a satisfaction of all his obligations to them.

So far as any laches in taking action in the court to have his claim paid is concerned, we are unable to see wherein the obligation rested upon him to take such action at all. The obligation to settle the estate and pay the claims rested upon the administrator, and while the owner of the claim may take action to expedite payment of his claim where there has been unreasonable delay in the administration, yet that is not obligatory upon him, but he has a right to assume that the administrator will pay claims in the due course of administration when the estate is in a condition for such payment.

Appellants also contend that Keith was not entitled to [11] subrogation on the merits. The facts are undisputed that Keith, as guardian of his former wards from whose funds he made the loans evidenced by the promissory notes, made full and complete settlement with his wards, turning over to them cash in lieu of these notes. By that settlement the wards received all moneys and property which they were entitled to receive from him as guardian, and therefore it is inconceivable that they could have any further interest in or claim to the notes. They cannot receive from their former guardian cash in lieu of the notes and at the same time claim the notes. Their claim to the notes was extinguished by the payment to them of the money for which the notes were given. Such settlement, however, did not destroy the notes nor extinguish the claim that had been allowed against the estate of the deceased. The estate could have no interest or concern in the ownership of the notes, for it could make no difference to it to whom the payment was made, provided, however, that it did not make payment to the wrong person, and thereby incur the danger of being obliged to pay the claims twice. The interest of the minors was extinguished, and the notes were still in full force and effect as against the makers thereof. The title must have been lodged in someone, and under the circumstances no one could have any interest in them except Keith, who had turned over to his wards money instead of the notes upon the latter being rejected by

them. If he had been required to surrender the notes to the wards after having made settlement ·with them, they would have received the $15,000 with interest twice, while he would have been compelled to make payment of that amount twice, which, from any standpoint, would be unjust and inequitable. The principle of subrogation is intended to relieve against just such inequities as this would be. Upon making payment to his wards of cash in lieu of the notes representing money of his wards which he had loaned, he was entitled to an assignment to him of the notes, but the assignment was not made. The law, by the rule of subrogation, supplies the defect, and, in principle, says that, even though a formal assignment was not made, yet, as in equity and good conscience the law will not permit· one party to be benefited by a double exaction, so will it not require the other party to suffer the penalty of double exaction. It will treat the transaction the same as though that was. done which should have been done, and hold that Keith shall, by the right of subrogation, be held to be the owner of the notes.

Appellants urge that subrogation should not be allowed [12] in this case because Keith made an unwarranted investment of his wards' funds by loaning them to individuals without an order of the court, and was compelled to account for such funds, and therefore does not come into court with clean hands. They cite several cases to that effect, but those cases seem to be based upon the principle· that one acting in a fiduciary relation, making unwarranted investment of the funds of the beneficiary, cannot reap a profit by reason of his wrongdoing or place himself in a more advantageous position by reason of his perpetration of a fraud. (*Rowley* v. *Towsley*, 53 Mich. 329, 19 N. W. 25; *Bank* v. *United States*, 148 U. S. 573, 37 L. Ed. 564, 13 Sup. Ct. Rep. 702 [see, also, Rose's U. S. Notes]; *Guckenheimer* v. *Angevine*, 81 N. Y. 395; *Brown* v. *Sheldon State Bank*, 139 Iowa, 83, 117 N. W. 293.) But no one of these cases goes to the extent of holding that such a person would not have an interest in the unwar-

ranted investment to the extent of reimbursement for moneys expended by him in accounting therefor. We believe the general rule to be that when one acting in a representative or fiduciary capacity uses his own funds to satisfy an obligation for the benefit of his trust, he is subrogated to the rights of his principal against others primarily liable, and that such general rule is applicable in this case. (37 Cyc. 439, 440, 442; *Smith* v. *Moore,* 109 S. C. 196, 95 S. E. 351; *Franzell* v. *Franzell,* 153 Ky. 171, 154 S. W. 912; *Buskirk* v. *Sanders,* 70 W. Va. 363, 73 S. E. 937; *Flowers* v. *Reece,* 92 Ark. 611, 123 S. W. 773; *Earle* v. *Coberly,* 65 W. Va. 163, 17 Ann. Cas. 479, 64 S. E. 628.)

It is urged that the claim should not be allowed for the [13] reason that the deceased was, at the time of signing the notes, an Indian and a ward of the government, and that, as such, she could not bind herself to pay the notes unless they were executed and approved in accordance with the requirements of the United States Compiled Statutes of 1916, section 4087, reading as follows:

"No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:

"First. Such agreement shall be in writing, and a duplicate of it delivered to each party.

"Second. It shall be executed before a judge of a court of record, and bear the approval of the secretary of the interior and commissioner of Indian affairs indorsed upon it.

"Third. It shall contain the names of all parties in interest, their residence and occupation; and if made with a tribe, by their tribal authorities, the scope of authority and the reason for exercising that authority, shall be given specifically.

"Fourth. It shall state the time when and place where made, the particular purpose for which made, the special thing or things to be done under it, and, if for the collection of money, the basis of the claim, the source from which it is to be collected, the disposition to be made of it when collected, the amount or rate per centum of the fee in all cases; and if any contingent matter or condition constitutes a part of the contract or agreement, it shall be specifically set forth.

"Fifth. It shall have a fixed limited time to run which shall be distinctly stated.

"Sixth. The judge before whom such contract or agreement is executed shall certify officially the time when and place where such contract or agreement was executed, and that it was in his presence, and who are the interested parties thereto, as stated to him at the time; the parties present making the same; the source and extent of authority claimed at the time by the contracting parties to make the contract or agreement, and whether made in person or by agent or attorney of either party or parties.

"All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or anyone else, for or on his or their behalf, on account of such services, in excess of the amount approved by the commissioner and secretary for such services may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the treasury for the use of the Indian or tribe by or for whom it was so paid."

It is unquestioned that the notes were not executed and approved in accordance with the requirements of this statute,

and appellants insist that by reason thereof they were absolutely void and nonenforceable. It is to be noted that the statute limits the kind of contracts to be executed by Indians to contracts which must be executed and approved in accordance with the statute, namely: Contracts involving "services for said Indians relative to their lands, or to any claims growing out of, or in reference to annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States." Appellants have cited a number of cases in support of their contention, but it is sufficient to say that in each one of the cited cases it appears that the contract involved was one relating to some one of the matters above set forth. In the case at bar the notes had nothing whatever to do with any of the items mentioned in this statute.

In the case of *Postoak* v. *Lee*, 46 Okl. 477, 149 Pac. 155, the court gives what we conceive to be a proper interpretation of this statute, in the following language: "It is, however, contended by the plaintiff in error that Jack Postoak had no right to enter into this contract because he was a full-blood Mississippi Choctaw Indian. This contention is not well taken. The fact that one of the parties to the contract was a full-blood Indian did not incapacitate him or impair his right to enter into this contract. He had the same right as other persons to make contracts generally. The only restriction on this right peculiar to an Indian, was in regard to contracts affecting his allotment. These he could not make without the consent and approval provided by law. The contract above set out was not within the restricted class." There can be no question but that Indians, unless prohibited by this [14] statute, may make valid contracts (22 Cyc. 115.) In our opinion, this statute is insufficient to reach a case such as this (*Smith & Steele* v. *Martin*, 28 Okl. 836, 115 Pac. 866; *Green* v. *Tribe*, 233 U. S. 588, 58 L. Ed. 1093, 34 Sup. Ct. Rep. 706 [see, also, Rose's U. S. Notes]), and therefore it must be

[61 Mont. 173.]

held that, even though Louise Stinger was an Indian and a ward of the government, yet she had the right to sign a promissory note such as the ones in question which did not involve the property rights mentioned in the cited statute.

It is also urged that this claim cannot be allowed against [15] the estate for the reason that deceased was merely an accommodation maker, and that the principal debtor was released by Keith's failure to bring action against him within the time limited by the statute of limitations. It is undisputed that she did not sign on the back of the note as an indorser, but that she signed the note on its face as a maker, the same as the others. The evidence is contradictory as to whether or not she was an accommodation maker, but that is immaterial. She was one of the makers of the note, and she was primarily liable for its payment, even though an accommodation maker.

The fact that the statute of limitations was allowed to run [16] as against Louise Stinger's co-makers did not prejudice her or her estate any, as her or its right to reimbursement from the principal debtor does not depend on that fact. The limitation of any action by her or it against the principal debtor would commence to run from the date that she or it paid the notes, and not before. (Spencer on Suretyship, pars. 119, 122, 124, 154, 155, 165; *Oppman* v. *Steinbrenner*, 17 Mont. 369, 42 Pac. 1015; *Northwestern Nat. Bank* v. *Opera House Co.*, 23 Mont. 1, 57 Pac. 440.)

The order granting the motion for new trial is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.