SPEAR ET AL., RESPONDENTS, *v.* RYAN ET AL., APPELLANTS.

(No. 4,837.)

(Submitted June 1, 1922.  Decided July 3, 1922.)

[208 Pac. 1069.]

*Promissory Notes—Defenses—Consideration—Liability of Accommodation Maker—Duress on Third Person.*

Promissory Notes—Consideration—Liability of Accommodation Maker.
1. One who signs a promissory note is primarily liable for its payment even though he sign only as accommodation maker, and therefore an allegation in the maker's answer that he received no consideration for its making and that the payee knew this to be the fact was properly stricken.

Same—Negotiability—Contemporaneous Agreement.
2. A promissory note negotiable on its face and which did not contain any reference to a contemporaneous contract of settlement between the parties, in which contract it was provided that the amount stated was subject to correction, was negotiable.

Same—Duress on Third Persons No Defense.
3. As a general rule, a contractual obligation cannot be avoided because of duress imposed upon a third person, with the possible exception of persons who bear a close relationship to the threatened person, such as husband and wife, parent and child, *etc.*

Same—Case at Bar.
4. Under the above rule (par. 3), *held*, that the defense of duress was not available to the maker of a promissory note given to prevent threatened criminal prosecution against his co-maker for failure to pay over moneys collected by the latter.

Same—What not a Credit on Indebtedness.
5. Where a debtor in settlement of indebtedness transferred to his creditor his equity in land under a contract of purchase but subsequently failed to complete payments thereon resulting in cancellation of the contract of purchase, the maker of a promissory note in payment of the balance of the debt was not, in an action to recover on the note, entitled to credit for the value of the equity.

Same—Correct Amount of Debt—Evidence—Admissibility.
6. Where a contract for the settlement of an indebtedness stated that the amount of the debt therein specified was only tentative and subject to change and correction as errors and omissions were proven, evidence as to the correct amount of the indebtedness was admissible in an action against the maker of a note given in payment of the indebtedness.

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

---

2. Contemporaneous written instrument as affecting negotiability of bill or note, see note in 5 Ann. Cas. 152.

ACTION by C. L. Spear and another, as agents, against John P. Ryan, Frank C. Walker, and another to recover on a promissory note. Judgment for the plaintiffs and defendants Walker and another appeal from the judgment and from the order denying their motion for a new trial. Affirmed.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Appellants, submitted a brief; *Mr. Wagner* argued the cause orally.

Appellants contend the court erred in striking from the amended answer the matters contained in the first specification of error. In the case of *Merchant's Collection Agency* v. *Roantree,* 37 Cal. App. 88, 173 Pac. 600, a similar defense was interposed, and the district court of appeal of California held the defense to be good. The defense there was lack of consideration for the note sued upon and duress in obtaining it. The doctrine of that case has been very recently reiterated and affirmed in the case of *People* v. *Beggs,* 178 Cal. 79, 172 Pac. 152. We invite attention to the New York case of *Adams* v. *Irving Nat. Bank,* together with the case note in 6 L. R. A., at page 491, and also *Pearce* v. *Brown,* 74 U. S. (7 Wall. 205), 19 L. Ed. 134, wherein it is held a contract procured by fear of imprisonment is sufficient to defeat a contract. However, it requires only a mere suggestion to show that the facts pleaded in the matter stricken, if proven, render the contract wholly unenforceable, because plaintiffs in procuring the note, if procured as alleged, were guilty, not only of compounding a felony but of extortion as well. (13 C. J. 492; *People* v. *Beggs,* 178 Cal. 79, 172 Pac. 152; see, also, *Brush* v. *City of Helena,* 54 Mont. 254, 169 Pac. 285.)

The note sued upon having been given in connection with a contract in writing, it was a non-negotiable instrument (Rev. Codes 1907, sec. 5031; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *Spotton* v. *Dyer,* 42 Cal. App. 585, 184 Pac. 23; 8 C. J. 196, 197, secs. 327, 328). The negotiable instruments law is therefore of no pertinency whatever in the determination of the issues involved in this controversy. (*United States*

*Nat. Bank of Red Lodge* v. *Shupak,* 54 Mont. 542, 172 Pac. 324.)

*Messrs. Frank & Gaines,* for Respondents, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

The defense of duress was not available to defendants Walker and O'Hara. (See *Robinson* v. *Gould,* 11 Cush. (Mass.) 55; *Huscombe* v. *Standing,* Cro. Jac. (Eng.) 187; *Springfield Card Mfg. Co.* v. *West,* 1 Cush. (Mass.) 388; *Oak* v. *Dustin,* 79 Me. 23, 1 Am. St. Rep. 281, 7 Atl. 815; *East Stroudsburg Nat. Bank* v. *Seiple,* 29 Pa. Co. Ct. 245; *Bowman* v. *Hiller,* 130 Mass. 153, 39 Am. Rep. 442; *Fountain* v. *Bigham,* 235 Pa. 35, Ann. Cas. 1913D, 1185, 84 Atl. 131; *Noyes* v. *State,* 46 Wis. 250, 32 Am. Rep. 710, 1 N. W. 1; *City Nat. Bank* v. *Kusworm,* 88 Wis. 188, 43 Am. St. Rep. 880, 26 L. R. A. 48, 59 N. W. 564; *Graham* v. *Marks,* 98 Ga. 67, 25 S. E. 931; 9 R. C. L., "Duress," sec. 18, p. 729.)

MR. JUSTICE FARR delivered the opinion of the court.

Complaint in usual form on a promissory note. Judgment for plaintiffs, and defendants Frank C. Walker and Margaret O'Meara appeal from the judgment and from the order denying their motion for new trial. L. N. Brainerd was the special agent of the Aetna Insurance Company of Hartford, Connecticut, and C. L. Spear was the special agent of the Phoenix Insurance Company, Limited, of London, and as such they bring this suit. John P. Ryan, one of the defendants, was an insurance agent or broker doing business in the city of Butte, Montana, and wrote insurance as agent for these two companies. He became in arrears in remitting for insurance premiums collected, and when an adjustment of the premiums collected and unaccounted for was required of him by Brainerd and Spear on behalf of their respective companies, an adjustment and settlement of the premium accounts with these companies was agreed to in writing, pursuant to the terms of which, and as a part satisfaction of the accounts

in question, the defendant Ryan paid Brainerd and Spear in behalf of their respective companies $1,173.69 in cash, and gave them city of Butte warrants totaling $530, bill of sale of a Chalmers automobile, an assignment of the equity of himself and wife in some real estate in Butte, and a note for $1,000 signed by Ryan and the defendants Frank C. Walker and Margaret O'Meara. By the agreement of settlement, Ryan acknowledged that he was indebted to the insurance companies "in the sum of $2,789.39, more or less, as per statement designated 'tentative agreement of account,' which are the considerations for this undertaking and which are hereby made a part hereof. It is specifically understood and agreed, however, that the said agreements of account are subject to change and correction as errors or omissions are proven."

Attached to this agreement is what is termed a "tentative agreement of account," which contains the items of accounts, with the policy number of each, the name of the insurer, the agent's commissions, and the premium. The note sued upon is the note specified in this agreement of settlement as a part satisfaction of the accounts therein mentioned, which the defendants Frank C. Walker and Margaret O'Meara executed, as they say, as accommodation makers. The defendant Ryan was not served with summons, and did not appear.

The defendants Walker and O'Meara in their amended answer, in paragraph 3 thereof, sought to defend upon the [1] ground that, when the note was made and delivered to the plaintiffs, the plaintiffs well knew that the defendants were accommodation makers of the note, and that no consideration of any kind or character whatsoever passed to the answering defendants, and that as to them the note was without consideration. This paragraph of the amended answer was, on motion, stricken out, and error is assigned to this ruling of the court. This portion of the answer stricken did not constitute a defense. The defendants Walker and O'Meara were two of the makers of the note, and they were primarily liable for its payment, even though accommodation makers. (*Merchants'*

*Nat. Bank* v. *Smith,* 59 Mont. 280, 15 A. L. R. 430, 196 Pac. 523; *In re Stinger's Estate,* 61 Mont. 173, 201 Pac. 693.) It necessarily follows that the court properly refused to admit in evidence the testimony offered as to want of consideration in support of that portion of the answer stricken from the record.

There is no merit in the defendants' contention that by [2] virtue of the provisions of the contract of settlement the note sued on became non-negotiable. While the note was given, so far as John P. Ryan is concerned, pursuant to the contract, there is no reference in the note to the contract. Upon its face it was a negotiable promissory note, and was sued on by the payees therein named.

In subdivision 2 of the answer, paragraph 3, the defendants [3, 4] Walker and O'Meara sought to defend on the ground that duress had been imposed on their codefendant, Ryan, in connection with the execution of the note, in that prior to the time the note was executed Ryan was the agent of these two insurance companies, and during the course of his employment as such agent he "collected large sums of money belonging to the said plaintiffs, and he was accused by the said plaintiffs with the conversion and embezzlement of large sums thereof, to-wit, in excess of $1,000, and was then and there threatened by the plaintiffs, C. L. Spear and L. N. Brainerd, with prosecution, arrest and detainment unless he would secure the said plaintiffs by delivering to them a negotiable instrument in manner and form as that alleged in plaintiffs' complaint, and the said defendant John P. Ryan, by virtue of the threats aforesaid, and being then and there actuated by fear of arrest, prosecution and detainment of his person, and to avoid the said threats being carried out, was induced to and did execute and procure the execution of the said note as alleged in plaintiffs' complaint, and did deliver it to the plaintiffs; and these defendants further allege that if said threats had not been made the said note would not have been executed or delivered." These and other portions of the amended

answer were on motion stricken, and the action of the court in so doing is assigned as error.

The legal question presented by this assignment is: Will duress imposed upon a principal, causing him to enter into an obligation, avoid the obligation of his sureties, if the latter at the time of executing the obligation know of the circumstances establishing the duress? By this portion of the amended answer which was stricken out Walker and O'Meara sought to defend upon the ground that they had signed as sureties, and only for the accommodation and benefit of Ryan as principal, and it is upon the legal principles governing such a situation that a determination of the question must be based.

It is the general rule, subject to but few exceptions, that a contractual obligation cannot be avoided because of duress imposed on a third person. In other words, the law does not regard a person under duress who enters into a contract to relieve another person and not himself. There are certain exceptions to this rule, recognized by some but not by all of the authorities, in favor of a husband and wife, parent and child, and other persons sustaining such a close relationship to the threatened individual as that in fairness it may be said that the threats coerce their judgment and actions, and any one of these excepted classes may, under some authorities, avoid a contract made to relieve the other from duress (9 Ruling Case Law, subject, "Duress," sec. 16, p. 726; 3 R. C. L., subject, "Bills and Notes," sec. 317, p. 1103), but none of these exceptions are involved in the instant case.

In *Huscombe* v. *Standing*, Cro. Jac. (Eng.) 187, one of the earliest cases in point, it appeared that the defendant having been sued on a bond, on which he was surety for one Street, entered a plea that the bond was obtained by duress of his principal. The plaintiff demurred to this plea, and without argument it was held that "It was not any plea for the surety, although it had been a good plea for the said Street, for none shall avoid his own bond for the imprisonment or danger of any other than of himself only."

In *Oak* v. *Dustin,* 79 Me. 23, 1 Am. St. Rep. 281, 7 Atl. 815, in referring to the earlier cases of *Springfield Card Mfg. Co.* v. *West,* 1 Cush. (Mass.) 388, and *Robinson* v. *Gould,* 11 Cush. (Mass.) 55, the court said: "The defense is duress—not duress of the surety, against whom the action is brought, but duress of the principal in the bond, who is not sued. * * * The defense cannot prevail. The person on whom the duress was practiced is the only one who can take advantage of it as a ground of defense. It cannot be set up by a stranger, nor by a surety, on whom no restraint was imposed."

The rule is stated in 3 R. C. L., subject, "Bills and Notes," section 317, page 1103, as follows: "As a general rule, the defense of duress is not available in an action upon a note given to prevent the criminal prosecution of another." And in 9 R. C. L., subject, "Duress," section 18, page 729, amplification of this rule is made as follows: "In accordance with the principle that the defense of duress is open only to the person upon whom it is imposed, it is the rule in a majority of jurisdictions that duress to a principal will not avoid the obligation of a surety if the latter at the time of executing the obligation knows of the circumstances establishing the duress. As has been said, the duress of the principal cannot affect the free agency of the surety or in any way control his action. It may excite his feelings, awaken his generosity, and induce him to act from motives of charity and benevolence toward his neighbor; but it can furnish no valid ground of defense against his contract, which he has entered into freely and without coercion."

According to the allegations of this attempted defense of duress, Walker and O'Meara were not ignorant of the matters which they claimed constituted duress, for they say that "If said threats had not been made, the said note would not have been executed or delivered." The effect of their pleading is merely to indicate that because of the pressure brought to bear upon Ryan and to help him out in the matter they consented to sign the note with him. The court, therefore, committed no error in striking out this portion of the amended answer.

In view of our conclusions it is unnecessary to consider whether the facts as pleaded are sufficient to sustain the defense of duress as to the defendant Ryan. It is questionable whether these allegations of the amended answer would be sufficient to constitute a defense even as to the defendant Ryan, under the ruling of this court in the case of *Bullard* v. *Smith*, 28 Mont. 387, 72 Pac. 761, and the general principle of law applying to the sufficiency of threats of a criminal prosecution or imprisonment, to constitute duress in any given case. (13 C. J., subject, "Contracts," sec. 315, p. 400.)

The remaining assignments of error relate to the court's [5] findings of fact, and involve two propositions, both properly raised under the defense of payment, which will be considered in the order of their presentation. First: It is claimed that there should have been credited on the total amount due the plaintiffs under the agreement of settlement they made with John P. Ryan the reasonable market value of the equity of Ryan and his wife in the real property, which equity was assigned to plaintiffs. It appears that Ryan and wife had previously entered into an agreement with the owner for the purchase of some real property in the city of Butte for either $2,200 or $2,250. There was a mortgage of $1,100 on this property to be assumed by the purchaser. A deed to the property was left in escrow with the agreement with a Butte bank, to be delivered to Ryan when he paid for the property pursuant to the terms of the escrow agreement. In assigning his "equity" in this agreement, it was provided by Ryan and wife in the assignment that the said "C. L. Spear and L. N. Brainerd, agents, do not assume any of the obligations contained in the contract for the purchase * * * by virtue of which the equity referred to exists, and we hereby agree that we will faithfully perform all the obligations imposed upon us by the said contract for deed."

It was testified to that the value of this equity at the time was about $800, for which amount the defendants Walker and O'Meara claimed that Ryan should have credit. The court

found that "Neither Ryan nor his wife performed any of the obligations imposed on them by the contract of purchase, out of which said 'equity' existed, after said assignment, and made no further payments on the said property, and on account of their default the 'Wulf-Alley Company,' the owners of said real estate, canceled Ryan's contract to purchase, and took the deed up, and all interests of Ryan and his wife, that had been assigned to the plaintiffs, ceased and were thereby forfeited to the Wulf-Alley Company, and the plaintiffs realized nothing therefrom."

This finding is fully in accord with the undisputed evidence. The conclusion necessarily follows that whatever "equity" there may have been was lost, not through plaintiffs' fault or neglect, but by reason of the failure of Ryan and his wife to make the payments according to their agreement. We do not understand upon what theory either Ryan or the other two defendants would be able to claim any credit with respect to this real estate. Whatever "equity" there may have been at the time of the contract and assignment was, of course, contingent upon the contract of purchase being completed by Ryan. He agreed with plaintiffs to make the payments and complete the contract, but he defaulted, and the title reverted to the original owner. Defendants' contention is without merit.

Second. As to the credit claimed because of the sale of the automobile: There was a mortgage lien on the automobile which the defendant Ryan obligated himself to discharge, but he did not do so, and it became necessary for the plaintiffs to pay the mortgage thereon. They afterward sold the car, so far as appears for a fair price, and repaid themselves for the money used in releasing the chattel mortgage thereon, and also for the money paid for repairs and storage, which left a balance of $185.15 to apply on the note. The court so found, and there was ample evidence to support the finding.

The district court properly admitted evidence as to the correct amount of Ryan's indebtedness to the plaintiffs, [6] which was in excess of the sum mentioned in the agreement

of settlement, $2,789.39, that sum being specified as only "tentative" of the amount due; it being specifically agreed that the insurance accounts were subject to change and correction as errors or omissions were proven. After applying this $1,000 note on the total of Ryan's indebtedness, after all corrections were made, there would still be a balance due the plaintiffs from Ryan, under the agreement of settlement, of over $300.

There is not any error in the record, and the judgment and order appealed from are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.

Rehearing denied September 12, 1922.