FIRST STATE BANK OF PHILIPSBURG, APPELLANT, v. MUSSIGBROD ET AL., RESPONDENTS.

(No. 6,291.)

(Submitted June 4, 1928. Decided July 14, 1928.)

[271 Pac. 695.]

70

*Mr. S. P. Wilson* and *Mr. R. E. McHugh,* for Appellant, submitted an original, a reply brief and a supplemental brief; *Mr. Wilson* argued the cause orally.

*Mr. P. E. Geagan,* for Respondents Herman S. Mussigbrod and Mary S. Mussigbrod, submitted a brief and argued the cause orally.

*Messrs. Scharnikow & Paul,* for Respondents Helene Cremer, Martin S. Mussigbrod and Herman S. Mussigbrod, submitted an original and a reply brief; *Mr. W. J. Paul* argued the cause orally.

*Mr. J. J. McDonald,* for Respondents Ludwig S. Mussigbrod, individually and as executor of the estate of Peter S. Mussigbrod, deceased, and Herman S. Mussigbrod, Jr., submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Herein are considered three separate appeals from a judgment and decree in a foreclosure proceeding instituted by the First State Bank of Philipsburg against Herman S. Mussigbrod and Mary S. Mussigbrod, his wife, and Ludwig S. Mussigbrod.

The complaint, filed December 2, 1925, is in the ordinary concise form for the foreclosure of a real estate mortgage; it alleges the execution and delivery, by Herman S. and Mary S. Mussigbrod, on September 12, 1923, of five certain promissory notes totaling $27,175, and the execution and delivery of a certain mortgage on the date last mentioned, as security for the payment of the notes. This mortgage covers in excess of 3,000 acres of land in Beaverhead county. The notes were

payable one year after date. The complaint alleges non-payment, and that plaintiff is the owner and holder of the notes; it further alleges that Ludwig S. Mussigbrod claims some interest in the lands described in the mortgage, but that any claim he may have is subsequent and junior to the claim of plaintiff. The prayer asked judgment against the defendants and that the judgment be declared a lien upon the lands described, with order of sale, etc., and that judgment be entered against Herman S. Mussigbrod and Mary S. Mussigbrod for any deficiency remaining after such sale.

Ludwig S. Mussigbrod answered by alleging that he claimed an interest in the lands as a legatee under the will of Peter S. Mussigbrod, deceased, and denied that such right was subsequent or inferior to any right of plaintiff, and further alleged that, at the time the mortgage was given, Herman S. Mussigbrod was a "mere trustee" holding the property in trust, and had no right or authority to mortgage or encumber the property or any part thereof, which facts were well known to the plaintiff, its officers and agents, at the time of the execution of the purported mortgage. He attached to his answer a copy of the will mentioned.

Certain of the subsequent pleadings seem to have been drafted in utter disregard of the rule that "only the ultimate facts, and not the evidence to support those facts, should be set forth" (*Enterprise Sheet Metal Works* v. *Schendel*, 63 Mont. 529, 208 Pac. 933) and the statutory provision that those facts be stated in "ordinary and concise language." (Sec. 9129, Rev. Codes 1921.) The pleadings as a whole cover approximately 350 pages of the record and more than a brief synopsis thereof would unduly cumber this opinion.

Herman S. and Mary S. Mussigbrod answered admitting the execution of the notes sued upon, but alleging that there was no consideration therefor; they then allege that the plaintiff had theretofore loaned divers sums of money to Ludwig S. Mussigbrod and set out in full numerous notes executed to the bank, which notes they allege were prior to September 12,

1923, secured by collateral. They then allege that in 1922 Herman S. Mussigbrod signed a note to the bank for the sum of $2,600, but allege that it was to cover an overdraft of Ludwig's and was left with the bank on promise that the officers thereof would secure Ludwig's signature thereto, which was not done. They admit the execution and delivery of a note to the bank for $1,400, executed and delivered for money loaned Herman S., and allege that he is willing to pay it. They deny that they were at any time indebted to the bank in any sum in excess of $1,400. The answer then alleges that the notes sued upon were in effect renewal notes for all those mentioned theretofore and that the mortgage was given upon the representation of the officers of the bank that that institution was in bad condition and the collateral given by Ludwig was insufficient and that they had to have additional security to show the bank examiner, or the bank would be forced to close, and that the mortgage would never be foreclosed but only held for the protection of the bank; that the officers well knew that Herman S. did not own the lands described and that their signatures to the notes and mortgage were obtained by fraud.

They allege, further, that, with the exception of one tract described as lot 2 of section 30, T. 1 S., R. 15 W., the lands were owned at that time in the proportion of one-fourth each by the estate of Peter S. Mussigbrod, deceased, Helene Cremer, Martin S. Mussigbrod and Herman S. Mussigbrod, and that this fact was well known to the plaintiff. As to lot 2 in section 30, these defendants allege that it was included in the mortgage by inadvertence and mistake of the scrivener as being included in the description of lands covered by a mortgage theretofore given by Peter S. Mussigbrod, by his attorney-in-fact, Ludwig S. Mussigbrod, but in fact was the property of Mary S. Mussigbrod individually. They also claim an interest in the lands solely as legatees under the will of Peter S. Mussigbrod.

To the answers of the parties made defendants, the plaintiff replied, denying all of the affirmative allegations made and alleging that it is a bona fide encumbrancer for value and without notice of any infirmities and took the mortgage relying upon the record title to the property, showing title in Herman S. and Mary S. Mussigbrod.

By order of court Herman S. and Ludwig S. Mussigbrod, as executors of the will of Peter S. Mussigbrod, were made parties defendant and thereafter filed their separate answer. It will be noted that in the answer of Herman S. and Mary S. Mussigbrod it is alleged that Herman S. Mussigbrod was the owner of a one-fourth interest in the lands; this party, of the same name, is the father of the original defendant; in the answer filed on behalf of the estate, Herman S. Mussigbrod, as an executor, has affixed to his name the abbreviation "Jr." This answer but amplifies those of Herman S. and Mary and Ludwig S. Mussigbrod and was met by similar reply, with the addition of a plea of estoppel by deed through which the record title descended to Herman S. Mussigbrod, Jr.

Thereafter Helene Cremer, Martin S. Mussigbrod and Herman S. Mussigbrod, Sr., were permitted to file a complaint in intervention by which it is alleged that long prior to 1913 these parties, termed the "German heirs," with Peter S. Mussigbrod owned a one-half interest in lands in Deer Lodge and Beaverhead counties, and in that year, or just prior thereto, by a trade with the owners of the remaining half interest, acquired full title to the Beaverhead lands which were conveyed to Peter S. Mussigbrod as the record title holder, in trust, however, for himself and these interveners; they attached thereto an agreement of date September 13, 1912, and duly recorded. The complaint in intervention further alleges that the interveners never authorized Peter S. Mussigbrod to sell or convey their interests in the land; that they were never indebted to plaintiff, had no knowledge of the mortgage and that plaintiff had knowledge of their owner-

ship and the trusteeship at the time the mortgage was executed and delivered.

In its answer to the complaint in intervention the plaintiff alleges that the interveners are barred by the statute of limitations; that plaintiff is a holder in due course of business, for value and without notice of infirmities, and relied upon the record title shown; that the interveners are estopped by virtue of powers of attorney executed by them to Peter S. Mussigbrod to sell or convey the property and, finally, are guilty of laches barring recovery. The allegations of the answer are put in issue by reply filed by the interveners.

On the issues framed by the pleadings the matter was tried to the court sitting without a jury. The evidence adduced, consisting of oral testimony and documentary evidence, covers between eight and nine hundred pages of the record but may be briefly summarized as follows:

Prior to September 12, 1923, Ludwig S. Mussigbrod had become indebted to the plaintiff bank in sums aggregating $28,892.35, past due on that date, and for which the bank had no adequate security. Herman S. Mussigbrod, Jr., was indebted to the bank on his note for $1,400 and had signed a note for $2,600 to take up an overdraft of Ludwig's, but Ludwig had not signed the note as comaker. The bank being in trouble and needing money and additional security, a majority of its directors and its attorney went to the Mussigbrod ranch on September 12, 1923, and there secured renewal notes signed by Herman S. and Mary S. Mussigbrod, totaling $27,175, payable one year after date, for which they surrendered all of the old notes. The old notes called for ten per cent interest, the new notes eight per cent.

The title to the property described in the mortgage, with the exception of lot 2 of section 30, stood of record in the names of Herman S. Mussigbrod and Mary S. Mussigbrod in the proportion of three-fourths and one-fourth, and lot 2 stood of record in the name of Mary S. Mussigbrod alone.

Long prior to 1912 Doctor Peter S. Mussigbrod and Doctor A. H. Mitchell had conducted the State Insane Asylum at Warm Springs in Deer Lodge county under a contract with the state. The partnership of Mitchell & Mussigbrod acquired large tracts of land in Deer Lodge and Beaverhead counties and conducted extensive farming operations thereon, Doctor J. M. Scanland acting as superintendent. In 1912 an arrangement was made whereby the state was to purchase and take over the insane asylum plant. During the acquisition of the properties a large part thereof had been, by mesne conveyance, transferred, not to Doctor Mitchell and to Doctor Mussigbrod, but either by aliquot parts or undesignated interests, to members of the Mitchell family and to Peter S. (the doctor), Martin S., Herman S. Mussigbrod and Helene Cremer, one-eighth each, while certain tracts were acquired in the name of Doctor Mussigbrod alone, and others in the names of single members of the Mitchell family.

The interveners were residents of Germany and, for the purpose of effecting the sale to the state and the disposition of the property generally, these parties executed to Doctor Peter S. Mussigbrod powers of attorney authorizing him to sell, exchange or transfer their holdings. After disposing of the asylum property to the state, the remaining property was divided by deeds from Doctor Mussigbrod personally and as attorney-in-fact for the German heirs, conveying the Deer Lodge county property to the Mitchells and by deeds conveying the whole of the Beaverhead county property to Doctor Peter S. Mussigbrod.

From 1907 to 1912 Herman S. Mussigbrod, Jr., acted as superintendent of the Beaverhead county property under Doctor Scanland, and thereafter Doctor Peter S. Mussigbrod, holder of the record title to the property, continued him in that position.

Doctor Mussigbrod gave to Ludwig S. Mussigbrod his power of attorney to sell or barter the property and thereafter departed for Germany, and in 1917 Ludwig, as attorney-in-

fact for Doctor Peter, mortgaged the property to the Larrabee Bank to secure the repayment of $17,000 borrowed by Herman S., for the purpose of constructing a reservoir for the conservation of water for irrigating the ranches.

In 1920, by virtue of the power of attorney last mentioned, Ludwig deeded the lands to Herman S. Mussigbrod, Jr., who thereupon redeeded a one-half interest therein to Ludwig S. Mussigbrod and a one-fourth interest to Mary S. Mussigbrod, his wife; the Ludwig interest was thereafter re-transferred to Herman S. These deeds were not placed on record until after the death of Doctor Peter S., in July, 1921.

Doctor Peter S. left a will, made in 1912, in which he appointed Ludwig S. and Herman S. Mussigbrod, Jr., his executors, devised to them his interest in the Beaverhead county property, and directed that ''my executors, as soon as possible after my decease convey to my brothers Herman S. Mussigbrod and Martin S. Mussigbrod and my sister Helene Cremer, their interest in joint property heretofore owned by them with me and which was conveyed by them to me in trust and being an undivided one-fourth interest in said property to each.''

On the trial all of the Mussigbrods testified, either directly or by deposition, that Doctor Peter S. Mussigbrod owned but a one-fourth interest in the property and held the three-fourths in trust for the three German heirs, and in this they were corroborated by Doctor Scanland and Edward Scharnikow, his attorney; and it was shown that the deeds by which the mortgagors obtained title through Doctor Peter S. Mussigbrod, by Ludwig S. Mussigbrod as his attorney-in-fact, were all given without consideration.

In refutation of the testimony of Herman S. and Ludwig Mussigbrod to the effect that they at all times knew of and recognized the rights of the German heirs, many circumstances opposed to such statements were shown by plaintiff, including verified reports by both in 1917 to the Alien Property Custodian in which this property was listed as belonging

to Doctor Peter S. Mussigbrod and it was denied that they had in their possession or under their control any property belonging to the German heirs.

It was further shown that the mortgagors negotiated with the plaintiff after the execution of the mortgage for a settlement, and sought to obtain a larger loan secured by mortgage upon the lands for the purpose, in part, of paying the indebtedness and satisfying plaintiff's mortgage. The mortgagors, however, testified that the mortgage was executed solely as an accommodation to the bank to prevent its insolvency and upon the promise of the officers of the bank that it would never be foreclosed but merely held for exhibition to the banking department.

After the death of Doctor Peter S. Mussigbrod, the Larrabee bank presented a claim to the estate for the amount due on the notes secured by mortgage on the lands in question, which claim was allowed by the executors and paid from funds of the estate.

On the record the court made findings of fact to the following effect: That on September 12, 1923, Ludwig S. Mussigbrod was indebted on promissory notes to various persons, including plaintiff bank, in the sum of $23,450 principal, on which interest was due and unpaid; that Herman S. Mussigbrod was indebted to the bank in the sum of $1,400 and had executed a note to the bank for $2,600, on which the bank claimed he was indebted, which claim was disputed; and that at that time the bank was the owner of a part of and holder of all of the notes mentioned. The court then finds that the officers of the bank represented to Herman and Mary S. Mussigbrod that the condition of the bank was such that these loans must be put in a satisfactory condition and suggested and requested that the two, as holders of the legal title to the lands described in the Larrabee mortgage, execute new notes in lieu of those held by the bank and a mortgage on the lands as security therefor, which request was complied with, and in doing so, by notes and mortgage drawn by the at-

torney for the bank, a considerable excess over the face of the new notes was remitted, the interest rate was reduced from ten to eight per cent, the payment period was extended for a year and all of the old notes were surrendered and delivered to the makers of the new notes; that Ludwig was present and took part in and agreed to the new arrangement.

The court then found that thereafter the bank dealt and negotiated with Ludwig, Herman and Mary Mussigbrod concerning payment of the notes executed as above.

By findings 10 and 11 the court declared that lot 2 of section 30 was the individual property of Mary S. Mussigbrod and that it was not the intention of the parties to include it in the mortgage.

. The court then found that the contention of the interveners was sustained and that Doctor Peter S. Mussigbrod but held a one-fourth interest in the lands in his own right and held the balance in trust for the interveners; that the condition of the records was such that a reasonable examination thereof would have disclosed this condition to the plaintiff; that the power of attorney given Ludwig by Doctor Peter authorized only a sale, barter or exchange "for value" but that the transfers by which Herman and Mary acquired paper title to the property were without consideration and void, as Ludwig exceeded his authority in so conveying the property, which facts were known to the grantee or grantees, and the instruments themselves were sufficient to have notified plaintiff of these facts, had its officers made proper investigation of the records.

The court further found that the plaintiff was not a bona fide purchaser for value without notice, except as to any interest which Ludwig, Herman and Mary actually had in the property, exclusive of lot 2, section 30; that no interest in the property had been acquired by adverse possession; that the statute of limitations had not run against the interveners, and that they were not guilty of laches nor estopped from asserting their title.

The court further found that Ludwig and Herman Mussigbrod, by the terms of the will mentioned, became entitled to all of the interest of Doctor Peter in the lands and, by his action and acquiescence, Ludwig, as well as Herman, mortgaged such interest to secure the payment of the notes executed by Herman and Mary in renewal of notes theretofore given by Ludwig and Herman and that Ludwig is estopped to deny the validity of the mortgage.

Finally, by finding 36, the court declared that Ludwig and Herman are liable to the plaintiff for the full amount of the principal of all of the notes given, with interest and attorney fees, and that the mortgage is a valid lien against all of the interest of Ludwig, Herman and Mary in the property described in the mortgage, exclusive of lot 2, section 30, and all that may be distributed to them under the will of Doctor Peter S. Mussigbrod.

As its conclusions from these findings the court declares: (1) That the interveners are the owners in fee simple of the three-fourths interest in all of the property described in the mortgage, except lot 2, section 30, and entitled to a decree quieting their title; (2) that Mary S. Mussigbrod is entitled to judgment canceling the mortgage as to lot 2 of section 30; and (3) that plaintiff is entitled to a judgment against Ludwig and Herman for the full amount sued for and decree of foreclosure and sale of all of the interest of Ludwig, Herman and Mary Mussigbrod in the property in controversy, except lot 2 of section 30.

Objections and exceptions were made by the several parties aggrieved to the findings affecting them, all of which were overruled by the court, and a judgment and decree was entered in conformity with the findings made and the conclusions reached thereon. From this judgment appeals were perfected by the plaintiff; by defendant Herman S. Mussigbrod, Jr., by Ludwig S. Mussigbrod, and the executors of the estate of Peter S. Mussigbrod, deceased.

Plaintiff makes 113 assignments of error and the remaining appellants have assigned numerous alleged errors, all of which, however, present but the questions hereinafter discussed in determining the rights of the plaintiff as against Mary S. Mussigbrod; as against Ludwig S. Mussigbrod; as against the Mussigbrod estate interest in the lands; and as to the correctness of the decree quieting in the interveners their title to the three-fourths interest in the lands, exclusive of lot 2 in section 30.

1. Plaintiff asserts that the court erred in canceling the ▮▮▮ mortgage as to lot 2, section 30, and in failing to render judgment and provide for a deficiency judgment against Mary S. Mussigbrod.

As to the exclusion of the lot in question, it is clear from the record that the mortgagors did not intend that it be included and that the attorney for the bank, who drew the mortgage, intended to follow the description given in the Larrabee mortgage, which did not include this lot; the acreage in the lot was not added to the total acreage given in the Larrabee mortgage; this lot appears in the mortgage only in the description "lots 1, 2, 3, 4 * * * section 30" and, with the understanding that the mortgage covered only the property theretofore mortgaged, the mere figure "2" in that description might easily be overlooked in a fairly careful reading of the mortgage. The evidence clearly warranted the finding that lot 2 was included in the mortgage by reason of a mutual mistake of the parties.

Counsel for plaintiff, however, contend that, as there is no suggestion of fraud or misrepresentation and Mary S. Mussigbrod negligently failed to read the mortgage, the mistake does not warrant the cancellation of the mortgage as to this tract as a matter of law, citing *Hennessy* v. *Holmes*, 46 Mont. 89, 125 Pac. 132. Such was the holding in the cited case, but that pronouncement was overruled in *Parchen* v. *Chessman*, 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631. Section 8726, Revised Codes of 1921, authorizes a revision of a contract

when through either fraud or mutual mistake the contract does not truly express the intention of the parties and rights of third persons, acquired in good faith and for value, will not be prejudiced; and this court has repeatedly held since that where the mistake was mutual and the circumstances such as to excuse the negligence of the complaining party, relief, by way of cancellation or reformation, may be granted. (*Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315; *Cox* v. *Hall*, 54 Mont. 154, 168 Pac. 519; *Kummrow* v. *Bank of Fergus County*, 57 Mont. 390, 188 Pac. 649.) The circumstances shown were such as to excuse the negligence of Mary S. Mussigbrod in failing to read the instrument and no error was committed in striking lot 2 from the mortgage.

2. As to the exemption of Mary S. Mussigbrod from liability on the notes: Had the parties desired merely a release of her inchoate right of dower in the lands described, that purpose could have been accomplished by her signature to the mortgage alone; when she signed the notes she "assumed personal liability for the debt"; she "made the debt her own" (*Grasswick* v. *Miller*, 82 Mont. 364, 267 Pac. 299), and, as a comaker of the notes in question and a mortgagor holding record title to a one-fourth interest in the lands, judgment should have been entered against her in the same manner and to the same extent as against her husband and comaker. (*In re Stinger's Estate*, 61 Mont. 173, 201 Pac. 693; *Spear* v. *Ryan*, 64 Mont. 145, 208 Pac. 1069.)

3. The defendant Ludwig S. Mussigbrod assigns error upon the court's action in entering judgment against him upon the notes in question and decreeing that his interest in the lands, acquired through or under the will of Peter S. Mussigbrod, be foreclosed and sold.

It is clear from the complaint that the plaintiff but joined Ludwig as a party defendant for the purpose of barring or foreclosing any interest which he might have in the lands and which was acquired subsequent to the giving of the mortgage, in the same manner as such alleged interests are

usually foreclosed. Had the bank desired to hold Ludwig as a debtor, it should, and would, have required him to sign the notes given in renewal of his original notes. It did not do so and the court was without authority to make a new contract for the parties. (*Batchoff* v. *Melzner*, 71 Mont. 411, 230 Pac. 48.)

Section 8425, Revised Codes of 1921, is a re-enactment of section 5866, Revised Codes of 1907; it declares that "no person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided"; the facts do not bring the case within any exception made, and under this provision of our Codes it is held that one whose name does not appear on a promissory note cannot be held liable thereon, even though the payee knew at the time of the making of the note that the obligation was that of another than the maker (*Kohrs* v. *Smith*, 45 Mont. 467, 124 Pac. 275; *First National Bank* v. *Cottonwood Land Co.*, 51 Mont. 544, 154 Pac. 582; *Young* v. *Bray*, 54 Mont. 415, 170 Pac. 1044). The judgment entered on these notes against Ludwig S. Mussigbrod cannot, therefore, be sustained.

4. As to the foreclosure of Ludwig's interest in the lands, it must be remembered that he transferred that interest to Herman S. Mussigbrod, one of the mortgagors, by warranty deed, prior to the execution of the mortgage, and at its execution stood by and agreed thereto and that the execution of both the notes and the mortgage was principally for the purpose of satisfactorily securing his debt to the plaintiff. Under the circumstances, and in equity, he is estopped by his deed from claiming an interest in the property adverse to the mortgagee whether his deed was intended as absolute or in trust, as he contends (sec. 6868, Rev. Codes 1921; *Dubbels* v. *Thompson*, 49 Mont. 550, 143 Pac. 986), and any title which he thereafter acquired inured to the benefit of the plaintiff as security for the payment of his debts assumed by his grantee. (Sec. 6867, Rev. Codes 1921; *Beck* v. *Fel-*

*enzer,* 69 Mont. 592, 223 Pac. 499; *Grasswick* v. *Miller,* above; sec. 8255, Rev. Codes 1921.)

5. As executors of the will and estate of Doctor Peter S. Mussigbrod, Herman and Ludwig contend that, as the court found that Ludwig exceeded his authority as attorney-in-fact by conveying the property to Herman without consideration, title to the lands was in the estate, as far as the interest of Peter S. Mussigbrod is concerned, and could only be mortgaged by order of court, and, therefore, the court erred in not decreeing to the estate an interest in the lands in the same manner that the interests of the three interveners were decreed. The answer to this contention is that Ludwig and Herman, as executors, did not attempt to mortgage estate property; Herman, with his wife, purported to mortgage property belonging to them. It was immaterial what the property was that was mortgaged; if the mortgagors then owned an interest in the property, or thereafter acquired an interest, their interest, present or prospective, was pledged for the payment of debt which they made their own by signing the notes sued upon. (Sec. 8255, above.)

The property of a testator vests in the devisees from the moment of his death, subject only to the right of the executors to possession for the purposes of administration (*Estate of Deschamps,* 65 Mont. 207, 212 Pac. 512). There is nothing in the record to indicate that any portion of the real property, title to which passed immediately on the death of Doctor Peter S. Mussigbrod, was necessarily held by the executors for the payment of debts of the estate or the expenses of administration; the testator was unmarried so that there could be no question of family allowance or dower. Under such circumstances the property might have been turned over to the devisees, on proper steps being taken, at any time after the issuance of letters testamentary (sec. 10318, Rev. Codes 1921); they were entitled to possession at the time the mortgage was executed, and the executors of the

estate, on the record, are in no position to complain of the decree of foreclosure.

6. Herman S. Mussigbrod assigns error on the action of the court in including the sum of $2,600 in the judgment, it having been shown that the original note signed by him for the amount was to have been held until signed also by Ludwig S. Mussigbrod. His counsel cites authorities to the effect that recovery cannot be had on such a note. However, no recovery was sought on that note. It is admitted that Ludwig was indebted to the bank in the sum of $2,600 in addition to his other indebtedness evidenced by properly executed notes, and Herman and his wife substituted their notes for all of such indebtedness, without stipulating that any of the notes given be signed by Ludwig; the $2,600 note was returned to them and became *functus officio*, and, on the trial, it was immaterial whether it should originally have been signed by Ludwig or not.

7. The record discloses that, because of the fact that the plaintiff bank was not permitted to loan in excess of $12,000 to an individual, the balance of the indebtedness mentioned, prior to the execution of the new notes and mortgage, was carried by two directors of the bank and that, after the execution of the new notes and the mortgage, two notes aggregating $11,507.40 were assigned in blank to the two directors. Appellant Herman S. Mussigbrod assigns numerous alleged errors upon the admission of these two notes in evidence and the entry of judgment including the amount thereof. His contention is that the owners of these notes were necessary parties plaintiff to any action on the notes and without them no judgment could be rendered, or, if plaintiff was entitled to a judgment and decree of foreclosure at all, it was only to the extent that plaintiff was the actual owner of notes proven.

Counsel for plaintiff assert that appellant waived the objection to nonjoinder by failure to plead it, either originally or when the facts were discovered during the trial;

but, as the evidence was admitted without objection, the answer of Herman S. Mussigbrod may be deemed amended to cover the point; however, we do not deem it necessary to so hold.

While it is held, and properly so, that the holders of two or more notes secured by the same obligation are proper parties plaintiff to a foreclosure proceeding (*Pogue* v. *Clark*, 25 Ill. 333), the purpose of the rule is that conflicting claims and interests may be adjusted and that the rightful holders of the mortgage security may get the amount to which they are entitled (*Wilson* v. *Hayward*, 2 Fla. 27), and that the debtor may be assured that he will not later be subjected to a second suit on the same notes.

Here, while the two directors mentioned were the owners of the notes in question, the bank was in possession thereof and was the sole mortgagee of record; the notes were produced in court in the presence of those owners, who appeared as witnesses for the plaintiff and made no objection to their notes being proved in the action and merged in the judgment; they were content that the plaintiff prosecute the action for them and could not later complain if they did not get what was coming to them, nor could they thereafter maintain an action against the makers of the notes so canceled and merged in judgment.

Section 9067, Revised Codes of 1921, provides that "every action must be prosecuted in the name of the real party in interest, except that * * * a trustee of an express trust * * * may sue without joining with him the person for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section." This section is taken from California where it has been repeatedly held that the party in whose name the contract is made is the proper party plaintiff in an action on the contract. The case of *Lauer* v. *Williams*, 32 Cal. App. 590, 163 Pac. 687, is directly in point here. Like holdings

are found in *Hoagland* v. *Trask,* 48 N. Y. 686; *Abrams* v. *Tainter,* 76 Neb. 109, 107 N. W. 225; see, also, Pomeroy's Code Remedies, 4th ed., pp. 141–145.)

When the bank took the notes in question as renewals of notes owned by the directors, but in the possession of the bank, and took the mortgage in its own name as security for all of the notes, whether owned by it or its directors, it became a trustee of an express trust to the extent that the notes and security were owned by the directors, and was entitled herein to secure judgment and decree of foreclosure in its own name without joining the directors as parties plaintiff.

8. The notes executed by Herman S. and Mary S. Mussigbrod were given for a sufficient consideration, as a pre-existing debt constitutes value (sec. 8432, Rev. Codes 1921; *Hackney* v. *Birely,* 67 Mont. 155, 215 Pac. 642; *Schauer* v. *Morgan,* 67 Mont. 455, 216 Pac. 347), and it is immaterial, under the circumstances of this case, that the obligations surrendered were those of another person. (Sec. 7503, Id.; *State Bank of Moore* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (n. s.) 501, 108 Pac. 914; *Hobson* v. *Hassett,* 76 Cal. 203, 18 Pac. 320.)

9. While the court made no direct finding on the question as to whether the plaintiff represented to the mortgagors that it would not foreclose the mortgage but would merely hold it for exhibition purposes, the findings and judgment, warranted by the evidence, necessitate an implied finding that no such promise or representation was made.

We have left for disposition but the controversy between the plaintiff and the so-called "German heirs" in whom the trial court quieted title to three-fourths of all of the lands described in the mortgage, except lot 2 in section 30, or, in other words, all of the lands the title to which passed to or through Doctor Peter S. Mussigbrod at any time whatsoever.

By reply brief counsel for the German heirs expressly disclaims any right under a trust created by agreement of the parties and relies solely upon the result of the transactions

had in 1912–1913, whereby the Mussigbrod interests in lands lying in Deer Lodge county were traded for the Mitchell interests in the Beaverhead county lands.

10. Counsel for plaintiff assert that, regardless of whether the proof adduced establishes a resulting trust or not, the court erred in quieting title in the interveners to the three-fourths of the lands in question, as plaintiff was a purchaser or encumbrancer for value and without notice. The court found to the contrary and, as there is substantial evidence in support of that finding, it will not now be disturbed.

Plaintiff asserts that the finding of the court to the effect that the instruments of record imparted notice to plaintiff of the trust is not supported by the evidence. Aside from the records, the finding of the court to the effect that the bank was not a holder in good faith without notice is sustained by the testimony of Herman and Ludwig that, prior to the execution of the mortgage, they advised the officers and attorney of the bank of the condition of the title to the property.

11. Plaintiff assigns error on the court's finding that the interveners were not guilty of laches in asserting their rights, and contends that evidence warrants a finding of laches barring recovery.

Plaintiff relies chiefly upon the declarations of this court found in *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758, that "laches * * * means negligence in the assertion of a right; * * * good faith and reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Considerations of public policy and the difficulty of doing justice between the parties are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may

be; and this is particularly so where the relations of the parties have been materially" changed, etc. "It never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such a change."

A strong showing of laches was made, in that it clearly appears from the record that for more than ten years after these interveners, by constituting Peter S. Mussigbrod their attorney-in-fact, thus enabling him to take title to the lands in question in his own name, paid no attention whatever to the property, neither received nor demanded an accounting nor any portion of the proceeds from their operation and were utterly indifferent to the manner in which it was handled or how encumbered, or what disposition was made thereof. However, there is testimony in the record to the effect that the lands were leased to Herman S. Mussigbrod, Jr., he to receive the net proceeds in consideration of caring for the property, and that Peter S. Mussigbrod, Herman S. Mussigbrod, Jr., and Ludwig Mussigbrod, as attorney-in-fact for Peter S. Mussigbrod, at all times admitted the trust and the rights of the interveners and that prior to the execution of the mortgage in question, the latter two advised the plaintiff of those rights, whatever they may have been, and on this testimony the court found against plaintiff on this question.

Although a court of equity will not enforce a resulting trust after a great lapse of time, or laches on the part of the supposed *cestui que trust*, when the trust is admitted and there has been no adverse holding, lapse of time is no bar; "any excuse for delay which takes hold of the conscience of the chancellor and makes it inequitable to interpose the bar is sufficient." (1 Perry on Trusts, 2d ed., 221, sec. 141; 25 Cal. Jur. 263; *Condit* v. *Maxwell*, 142 Mo. 266, 44 S. W. 467.) Under the circumstances we are not now justified in substituting our judgment or the dictates of the consciences of the members of this court for that of the trial judge and must uphold the finding on the subject of laches.

12. Error is also assigned on the finding that the statute of limitations had not run against the interveners. This contention is based upon the assertion that Doctor Peter S. Mussigbrod violated the trust imposed in him by his principals and therefore, if a trust was created, it is a constructive and not a resulting trust, and hence that the statute began to run from the recording of the deed to Peter S. Mussigbrod in 1913. The evidence, however, justified the finding that the actions of Doctor Mussigbrod were within the contemplation of the parties and that he did not act in hostility to his principals. The statute of limitations does not begin to run as against a *cestui que trust* until the trustee begins to act in hostility to his continuing obligation and, even where there is a repudiation of such obligation, the repudiation does not set the statute in motion until brought home to the *cestui que trust*. (*Hovey* v. *Bradbury*, 112 Cal. 620, 44 Pac. 1077; *Cooney* v. *Glynn*, 157 Cal. 583, 108 Pac. 506.) No error was committed in holding that the interveners were not barred by the statute of limitations.

13. Plaintiff contends that the court erred in receiving parol evidence to establish title to real property, but this contention is without merit. The statute of frauds has no application to such a case; the trust does not rest upon the agreement of the parties or admissions made by the holder of the title; but such oral testimony is admissible and may be important in assisting to establish the fact of the ownership of the consideration and how it was invested. (*Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240.) As such a trust is created by law it may be proved by parol testimony. (*Feeley* v. *Feeley*, 72 Mont. 84, 231 Pac. 908; *Wilson* v. *Wilson*, 64 Mont. 533, 210 Pac. 896.)

14. Plaintiff assigns error on the court's finding that the transactions had in 1912 and 1913, culminating in the deed from the Mitchells to Doctor Mussigbrod, resulted in a trust in favor of the interveners as to three-fourths of the

lands described in the mortgage, and contends that this finding is not supported by the evidence.

Section 6785, Revised Codes 1921, declares that "when a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

The consideration paid by or for the interveners for the property for which the transfer was made to Peter S. Mussigbrod on January 5, 1913, was the conveyance to his grantors of the interest of the interveners in the Deer Lodge county lands, and that interest was fixed and determined by the agreement entered into on September 13, 1912, according to the contention of the interveners approved by the court. The transfer of the Mussigbrod interest in the Deer Lodge county property to the Mitchells—the consideration for the transfer to Peter S. Mussigbrod of the Beaverhead county land—was made prior to the latter transfer. Plaintiff contends that a trust did not result, as the consideration must be paid at the time the transfer is made, citing many authorities from other states to that effect.

Whatever the rule in other jurisdictions, it has been declared in this state, under circumstances warranting such a holding, that the consideration must be paid at the time, or before the time, the legal title passes (*Feeley* v. *Feeley*, above, and cases there cited). By powers of attorney executed to Peter S. Mussigbrod, his brothers and sister in Germany had placed their interests in all of the property mentioned in his hands, and, in equity and good conscience, such consideration as they furnished must be considered as furnished in time to create a resulting trust if the facts and circumstances warrant the declaration of such a trust.

15. Some contention is made by the interveners that their powers of attorney should not have been admitted in evidence, over their objection, as the given names of these parties appearing therein are not as stated in the pleadings.

The names seem to be the German equivalents for the English names used in this country, and, as there are no cross-assignments of error made, this contention will not be further noticed.

16. Plaintiff insists upon the familiar rule that in order to create a resulting trust as to a part only of land conveyed, it must be clearly shown that the *cestui que trust* furnished an aliquot part of the consideration for the purchase of a definite part of, or interest in, the property.

While the evidence as to the interests of the German heirs in the Deer Lodge county property is meager, it appears from the record that all of the Mussigbrods joined in a transfer of the one-half of all of the property in which they owned an interest or agreed that the Mitchells owned a half interest in the Beaverhead county property, in consideration of a transfer to them of a one-half interest, or the agreement that they held a one-half interest in the Deer Lodge county property, and Doctor Scanland testified that each of the four Mussigbrods owned a one-eighth interest in that property; therefore, when they made the trade resulting finally in the deed to Peter S. Mussigbrod, each of the four Mussigbrods must have furnished the one-fourth of the consideration and thus intended to purchase the one-fourth each of the one-half interest thereafter transferred to Peter S. Mussigbrod, unless it be that they did not contribute to the entire consideration.

Doctor Scanland testified that a part of the consideration consisted of "some money," but did not disclose how much or by whom it was furnished. However, the court found that the interveners furnished their aliquot part of the consideration and we cannot say that the evidence preponderates strongly against this finding and therefore the finding will not be disturbed. (*Kelly* v. *Gullickson*, 75 Mont. 66, 241 Pac. 623.)

17. On the record made and the findings of the court the interveners were entitled to a decree quieting their title to the

extent of their interest in the lands described in the mortgage, but not to the full extent granted by the decree entered.

It will be recalled that, by their complaint in intervention, these parties claimed that, prior to the execution of the deed from which the trust resulted, they, with Peter S. Mussigbrod, were the owners of a one-half interest in the lands and by that deed Peter S. Mussigbrod acquired the remaining one-half interest for himself and these three interveners, share and share alike. It is conceded that a trust resulted only by virtue of the trade of the Mussigbrod interest in the Deer Lodge county lands for the Mitchell interest in the Beaverhead county lands, consummated by the deed of January 7, 1913, and the interveners expressly disclaimed the assertion of the existence of any trust created prior to that date by agreement of the parties or by virtue of any instrument of record. Bearing these facts in mind, the interests of the interveners should have been included or excluded from the decree as follows:

(a) Of the lands in controversy, neither the Mitchells nor the Mussigbrods had title or interest of record on the date last mentioned to the north half of the southwest quarter of section 29 and the south half of the northeast quarter, and the west half of the southeast quarter, the southeast quarter of the southwest quarter and northeast quarter of the southeast quarter of section 30, township 1 S., R. 15 W. This tract stood of record in the name of one Frank Carnes, the patentee, until March 18, 1913, or more than two months after the deed resulting in the trust was executed and was then conveyed by him to Peter S. Mussigbrod. Nothing further is shown in the record as to this tract and, as neither a trust resulted as to it nor any title or interest of record was shown, the full title to the tract should have been excluded from the decree quieting title in the interveners.

(b) After deleting lot 2 of section 30 and the lands last described from the descriptions in the mortgage, the three-eighths interest in and to all of the lands described should

have been quieted in the interveners as all of the Mitchells joined in conveying their one-half interest therein to Peter S. Mussigbrod, who, under the findings of the court, held a three-fourths of the one-half interest in trust for those parties.

(c) As no trust was created or established other than that by the deed of January 7, 1913, only those interests which the interveners had in the remaining one-half interest in the property left, after the deletion last mentioned, as shown by the records, should have been included in the decree quieting title.

In support of the allegations of the cross-complaint and to establish their right to the three-fourths of the Mussigbrod one-half of these lands, the interveners introduced in evidence the agreement entered into September 13, 1912, between the members of the Mitchell family, as parties of the first part, and Peter S. Mussigbrod for himself and as attorney-in-fact for the interveners, as the party of the second part, which counsel asserts resulted in the ownership by the four members of the party of the second part, or the four Mussigbrods, of equal parts of the one-half interest in each tract of land described. Plaintiff objected to the admission of this instrument in evidence and now contends that it should not be considered on the ground that it was not properly acknowledged on behalf of the interveners and therefore not entitled to record and consequently imparted no notice to plaintiff. This contention is without merit, as, conceding that it is not acknowledged as required by law, it was recorded and by an Act of the legislature approved January 25, 1913, now section 6932, Revised Codes of 1921, such a record imparts notice of the contents of the instrument to subsequent purchasers and encumbrancers.

We cannot, however, give to the instrument the interpretation urged by counsel for the interveners; its provisions, briefly summarized, are that whereas the members of the Mitchell family and the Mussigbrod family have in times past acquired title to numerous tracts of land intending that the two groups should each own a one-half interest therein, but that interest

has not always been shown by the instruments by which the title was acquired, it is agreed that such interest exists and each group quitclaims to the other a one-half interest in the lands described ''as their interests may appear by virtue of deeds and conveyances heretofore executed,'' subject to four deeds of trust theretofore executed to Doctor J. M. Scanland.

Clearly, the agreement fixed the rights and interests of the two groups, i. e., it quieted in each group a one-half interest in the lands ''as their interests appear'' of record; it did not attempt to fix or determine the rights of the several members of each group *inter sese,* and neither group was interested in what division was made of the alienate one-half interest in the lands. In other words, if the record showed that title stood of record to a certain tract in the names of the several Mitchells as to one-half interest, and as to the other half in the names of Peter S. Mussigbrod and the three interveners, the agreement did not affect the record title; if a tract stood of record in the name of the four members of the Mussigbrod family, a half interest was conveyed to the Mitchells and a one-half interest retained by the Mussigbrods jointly; but where the record disclosed that a tract stood of record in the name of Peter S. Mussigbrod alone and no interest in the interveners appeared from the record, no attempt having been made to show that he held the land in trust and, indeed, such claim having been expressly repudiated, 'title to the one-half interest in that tract remained in Peter S. Mussigbrod alone.

With this analysis we will consider the condition of the record title as to the one-half interest in the lands as to which no trust resulted.

The land naturally divides itself into the ''upper ranch'' and the ''lower ranch.''

(d) At the time of the agreement, of the ''upper ranch'' the east half of the southeast quarter of section 9 and the northwest quarter of the southwest quarter, and the southwest quarter of the northwest quarter of section 10, township 1 S.,

R. 16 W., stood of record in the names of Peter S. Mussigbrod and Mary Mitchell. The interveners had had, some time prior thereto, an interest in this land, but, as no attack is made upon the manner in which Peter S. Mussigbrod acquired that title, it must be held that the interveners were not entitled to a decree quieting title in this land in excess of the three-eighths interest awarded them under the trust declared.

(e) With the exclusion of the last described tract, the one-half interest in the "upper ranch" stood in the name of the four Mussigbrods and, therefore, as to those lands the court correctly held that the interveners were entitled to have their title quieted as to a three-fourths interest therein.

(f) Of the "lower ranch" the south half of the southwest quarter of section 28 and the south half of the southeast quarter of section 29, township 1 S., R. 15 W., was inherited by the four Mussigbrods from their father's estate; they conveyed a one-half interest therein to the Mitchells by the agreement above which was reconveyed by the deed from which the trust resulted, and consequently as to this land the court correctly held that the interveners were entitled to have their title quieted as to a three-fourths interest.

(g) The one-half interest in the south half of the southeast quarter of section 19 and the north half of the northeast quarter of section 30, township 1 S., R. 15 W., stood of record in the names of the four Mussigbrods, and again the court correctly held that the interveners should have their title quieted as to a three-fourths interest in this land.

(h) All remaining tracts included within the "lower ranch," after excluding the Carnes tracts disposed of above, stood of record in the name of Peter S. Mussigbrod as to the remaining one-half interest, and should not have been included in the decree quieting title so far as the one-half interest not covered as trust property is concerned.

18. Numerous assignments of error made have either not been treated or treated only incidentally in the foregoing dis-

cussion, but they have all been examined and found to disclose no prejudicial error and will not be here discussed.

In conformity with the foregoing opinion, the judgment herein is modified as follows:

(1) The name of Ludwig S. Mussigbrod is stricken from the money judgment awarded and the name of Mary S. Mussigbrod substituted therefor.

(2) The decree quieting title in the interveners is modified, quieting in them (a) a three-fourths interest only in ·and to the following described lands: The southwest quarter of the southwest quarter and the east half of the southwest quarter and the west half of the southeast quarter of section 10; the west half of the southwest quarter, southeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section 14; the northwest quarter of the northwest quarter, the east half of the northwest quarter, west half of the northeast quarter, southeast quarter of the northeast quarter, the north half of the southeast quarter, and the northeast quarter of the southwest quarter of section 15; the east half of the northwest quarter, west half of the northeast quarter, the northeast quarter of the southwest quarter, and the northwest quarter of the southeast quarter of section 23, township 1 S., R. 16 W.; the south half of the southwest quarter of section 28; the south half of the southeast quarter of section 29; the south half of the southeast quarter of section 19; and the north half of the northeast quarter of section 30, township 1 S., R. 15 W. (b) A three-eighths interest in and to the following described lands: The east half of the southeast quarter of section 9; the northwest quarter of the southwest quarter and the southwest quarter of the northwest quarter of section 10; lots 5, 6, 7 and 8, and the west half of the southeast quarter of section 25, township 1 S., R. 16 W.; the southwest quarter and the north half of the southeast quarter of section 19; the south half and the south half of the north half of section 20; the south half of the southwest quarter of section 29; lots 1, 3 and 4; the east half of the northwest

quarter; the northeast quarter of the southwest quarter; the southeast quarter of the southeast quarter of section 30; the north half of the north half of section 31, township 1 S., R. 15 W.

(3) That the provision for the entry of a deficiency judgment in the event the sale of the property on foreclosure does not satisfy, the money judgment is modified by substituting the name of Mary S. Mussigbrod for that of Ludwig S. Mussigbrod.

(4) The decree of foreclosure and sale of the mortgaged property is modified as to the interest in the property affected, to read as follows:

(a) All of the north half of the southwest quarter of section 29 and the south half of the northeast quarter and the west half of the southeast quarter, the southeast quarter of the southwest quarter and northeast quarter of the southeast quarter of section 30, township 1 S., R. 15 W.

(b) An undivided five-eighths interest in and to the east half of the southeast quarter of section 9; the northwest quarter of the southwest quarter and the southwest quarter of the northwest quarter of section 10; lots 5, 6, 7 and 8, and the west half of the southeast quarter of section 25, township 1 S., R. 16 W.; and the southwest quarter and the north half of the southeast quarter of section 19; the south half and the south half of the north half of section 20; the south half of the southwest quarter of section 29; lots 1, 3 and 4 and the east half of the northwest quarter, the northeast quarter of the southwest quarter and the southeast quarter of the southeast quarter of section 30, the north half of the north half of section 31, township 1 S., R. 15 W.

(c) An undivided one-fourth interest in and to the southwest quarter of the southwest quarter and the east half of the southwest quarter, and the west half of the southeast quarter of section 10; the west half of the southwest quarter, southeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section 14; the northwest quarter of

the northwest quarter, the east half of the northwest quarter, west half of the northeast quarter, the southeast quarter of the northeast quarter, the north half of the southeast quarter, and the northeast quarter of the southwest quarter of section 15; the east half of the northwest quarter, west half of the northeast quarter, northeast quarter of the southwest quarter, and the northwest quarter of the southeast quarter of section 23, township 1 S., R. 16 W.; the south half of the southwest quarter of section 28; the south half of the southeast quarter of section 29, the south half of the southeast quarter of section 19, and the north half of the northeast quarter of section 30, township 1 S., R. 15 W.

As modified, the judgment will be affirmed. It is ordered that the plaintiff recover judgment from the interveners for one-half of its costs of appeal, and otherwise each party shall pay his own costs.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied November 26, 1928.